## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RANDY NUNEZ, on behalf of himself and all others similarly situated,<br><br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>BEST BUY CO., INC., a Minnesota corporation, and BEST BUY STORES, L.P., a Virginia limited partnership,<br><br><br>　　　　　　　Defendants. | Case No. 15-cv-3965 (DWF/SER)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Randy Nunez brings this action on behalf of himself and all others similarly situated against Defendants Best Buy Co., Inc. and Best Buy Stores, L.P. (collectively, "Best Buy" or "Defendants"), and states:

### I.    NATURE OF ACTION

1.    This class action seeks to remedy Defendants' false and misleading representations of "original" or "regular" prices, purported "sale" prices, and corresponding phantom markdowns on merchandise sold in their retail stores.  During the Class Period (defined below), Defendants advertised, marketed, and sold merchandise while falsely representing former "original" or "regular" prices and with corresponding false price discounts for such merchandise sold throughout their retail stores.

2.    During the Class Period, Defendants engaged in unfair and deceptive practices by continually misleading consumers by advertising merchandise at purportedly discounted, "original," and "regular" prices.  Defendants would compare purported "sale" prices to their false former retail prices, which were misrepresented as "original" or "regular" retail prices.

Theadvertised discounts overstated and did not represent a *bona fide* price at which Defendants formerly sold the merchandise and were nothing more than mere phantom markdowns because the represented former prices were artificially inflated and were not the original or regular prices for merchandise sold at Defendants' retail stores. In addition, the represented "original" or "regular" prices were not the prevailing market retail prices within three months next immediately preceding the publication of the advertised former prices, in violation of Minnesota and California law.

3. Defendants convey their deceptive pricing scheme to consumers through the use of various media platforms, including, but not limited to, their in-store displays and print advertisements. For example, Defendants' pricing scheme is prominently displayed either on the sales tag, sales receipt, or directly adjacent to each "discounted" item listed, with the "regular" prices, which never existed or did not constitute the prevailing market retail prices for such products within the three months next immediately preceding the publication of the advertisement. The "sale" price is listed in bold above the "regular" price, alongside the phrase "ON SALE" in capital letters. The purported savings is listed with the phrase "SAVE" or "You Save" in a red typeface and/or all capital letters.

4. Additionally, Defendants advertise their products in their stand-alone retail stores through the use of individual price signs that provide: (1) the name of the item; (2) the model number; (3) the stockkeeping unit ("SKU") number (for internal tracking); and (4) information relating to the product including its dimensions and features. When Best Buy places an item on sale, the pricing sign is designated by a red "Sale" or "Sale Limited Time Only" label. Moreover, the pricing sign lists the amount the customer is purportedly "saving" along with the "regular" price and the "sale" price. Importantly, Defendants track the dates on which their

2

merchandise pricing signs are actually displayed in their retail stores with the designation, "Printed___(date)____." Defendants also track their retail merchandise sales with Sale "codes" that are frequently displayed on the pricing signs as denoted in bold print, "Sale" followed by a "Sale" code number.

5.    Through their false and misleading marketing, advertising, and pricing scheme, Defendants violated, and continue to violate, federal, Minnesota, California, and other state law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.

6.    The Federal Trade Commission ("FTC") has described misleading discount price comparison schemes such as those used by Defendants as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. §233.1(a).

7.    Minnesota law prohibits such deceptive pricing practices:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
> ...
> makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions[.]

Minn. Stat. §325D.44, subd. 1 (11).

8.      Likewise, the California Business & Professions Code and California Civil Code forbid false price comparison schemes:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code §17501.

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [. . .] Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

Cal. Civil Code §1770(a)(13).

9.      As a result of Defendants' false and misleading acts and practices, Plaintiff and members of the proposed Classes (defined below) have suffered injury in fact, including economic damages, and have lost money or property.  Specifically, Plaintiff and members of the Classes have purchased Defendants' merchandise under the mistaken belief that these products were offered for sale at an actual discount from Defendants' true "regular" or "original" item prices for those items.  But for Defendants' false and misleading advertising and marketing of their merchandise, Plaintiff and members of the Classes would not have purchased such merchandise, or would not have paid as much for such merchandise as they did.

10.     Plaintiff brings claims on behalf of himself and the proposed Classes for unjust enrichment, violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.09, *et seq.* ("MUTPA"); the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* ("MUDTPA"); the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F.68,

4

*et seq.* ("MPCFA"); the Minnesota False Statement in Advertisement Act, Minn. Stat. §325F.67 ("MFSAA"); the California Consumers Legal Remedies Act, Cal. Civil Code §1750, *et seq.* ("CLRA"); the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"); and the California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.* ("FAL"). Plaintiff seeks to permanently enjoin Defendants from using false and misleading claims regarding retail price comparisons in their packaging, labeling, and advertising. Further, Plaintiff seeks to obtain restitution and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of their sales of merchandise offered at a false discount. Plaintiff also seeks damages as provided for pursuant to Minnesota and California law. Finally, Plaintiff seeks reasonable attorneys' fees under Minnesota law and California Code Civil Proc. §1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

11.    This Court has original jurisdiction of this Action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Classes have a different citizenship from Defendants.

12.    This Court has personal jurisdiction over Defendant Best Buy Co., Inc. because it is a Minnesota corporation, is headquartered in Minnesota, owns and operates retail stores in Minnesota, systematically and continuously conducted business in and throughout the State of Minnesota, and intentionally avails itself of the markets within Minnesota through the promotion, sale, marketing, and distribution of its products. This Court has personal jurisdiction over Defendant Best Buy Stores, L.P. because it is headquartered in Minnesota, owns and

operates retail stores in Minnesota, systematically and continuously conducted business in and throughout the State of Minnesota, and intentionally avails itself of the markets within Minnesota through the promotion, sale, marketing, and distribution of its products.  Moreover, Plaintiff alleges on information and belief that Defendants' acts, practices, and policies pertaining to the advertising, marketing, and sale of merchandise at specific dollar or percentage discounts from "regular" or "original" retail prices were established in and emanated from Minnesota.  Further, Defendants' wrongful conduct, as described herein, foreseeably affects consumers in Minnesota and throughout the United States.

13.    Venue is proper in this District under 28 U.S.C. §1391(a) because Defendants are headquartered in this District and maintain sufficient contacts to subject them to personal jurisdiction if this District were a separate State.  Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendants are deemed to reside in this District.  As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendants are deemed to reside in this District and under 28 U.S.C. §1391(b)(2) because Defendants conduct business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## III.    PARTIES

### Plaintiff

14.    Plaintiff Randy Nunez resides in San Diego, California.  Plaintiff, in reliance on Defendants' false and deceptive advertising, marketing, and purported "discount" pricing schemes, purchased a microwave oven at one of Defendants' retail locations in San Diego, California for approximately $200 inclusive of sales tax, at a purported advertised discount of $20, and was damaged thereby.

498546.4

**Defendants**

15.     Defendant Best Buy Co., Inc. is headquartered and incorporated in Minnesota and maintains its principal executive offices in Richfield, Minnesota.  Defendant Best Buy Co., Inc. distributes and sells products, services, and solutions focused on technology to hundreds of thousands of consumers throughout the United States.  Plaintiff alleges that Defendant Best Buy Co., Inc.'s policies and practices concerning the false marketing, advertising, and sale of merchandise at discounted, "original," and "regular" prices were prepared and issued from Minnesota and the content of the deceptive language used in the marketing, advertising, and sales information was approved in Minnesota.

16.     Defendant Best Buy Stores, L.P. is a Virginia limited partnership, which is headquartered and maintains its principal executive offices in Richfield, Minnesota.  Defendant Best Buy Stores, L.P. distributes and sells products, services, and solutions focused on technology to hundreds of thousands of consumers throughout the United States.   Plaintiff alleges that Defendant Best Buy Stores, L.P.'s policies and practices concerning the false marketing, advertising, and sale of merchandise at discounted, "original," and "regular" prices were prepared and issued from Minnesota and the content of the deceptive language used in the marketing, advertising, and sales information was approved in Minnesota.

## IV.    FACTUAL BACKGROUND

### A.    Applicable Price Discounting Laws

17.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce."  (15 U.S.C. §45(a)(1)).  The FTCA specifically makes it "unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement."  (15 U.S.C. §52(a)).

7

18.     Under the FTCA, advertising must be truthful and non-deceptive, advertisers such as Defendants must have evidence to back up their claims, and advertisements cannot be unfair. According to the FTC, an advertisement is deceptive if it contains a misstatement or omits information that is likely to mislead consumers acting reasonably under the circumstances, and the statement or omitted information is material – that is, important to a consumer's decision to buy or use the product.

19.     The FTC has issued regulations describing misleading discount price comparison schemes such as those used by Defendants as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – ***the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.***  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. §233.1(a) (emphasis added).

> A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

16 C.F.R. §233.1(b).

> ***If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.***

8

16 C.F.R. §233.1(e) (emphasis added).

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area – that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. §233.2(a).

> The practices covered in the provisions set forth above represent the most frequently employed forms of bargain advertising. However, there are many variations which appear from time to time and which are, in the main, controlled by the same general principles. For example, retailers should not advertise a retail price as a "wholesale" price. They should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer. They should not offer seconds or imperfect or irregular merchandise at a reduced price without disclosing that the higher comparative price refers to the price of the merchandise if perfect. They should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited. In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the public.

16 C.F.R. §233.5.

20. Likewise, Minnesota law prohibits untrue, deceptive, and misleading pricing practices:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.

Minn. Stat. §325F.69.

> No person shall, in connection with the sale of merchandise at retail, or in, or in connection with the use of, samples, catalogs, or other forms of advertising listing merchandise for sale at retail, display price tags or price quotations in any form

showing prices which are fictitiously in excess of the actual prices at which such merchandise is regularly and customarily sold at retail by such person or by the person issuing such samples, catalogs, or other forms of advertising.

Minn. Stat. §325D.12(3).

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: [. . .] makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

Minn. Stat. §325D.44, subd.1(11).

Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

Minn. Stat. §325F.67.

21.    Similarly, California law specifically forbids false or misleading price comparison schemes:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code §17501.

The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [. . .] Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

Cal. Civil Code §1770(a)(13).

### B.    Best Buy Regularly Engages in Deceptive Pricing

22.    Consumers' Checkbook/Center for the Study of Services ("CSS") is an independent, nonprofit consumer organization based in Washington, D.C.  Its stated purpose is "to provide consumers information to help them get high quality services and products at the best possible prices."

23.    Beginning in June 2014, and continuing through March 2015, CSS conducted a survey of seven national retail chains and Amazon.com, tracking prices weekly for six to ten big-ticket items from each retailer.[1]  Most price checks were made online, with spot checking of in-store prices.

24.    The CSS survey discovered that for some of the stores, including Best Buy, "some of the products for almost all of the weeks we checked were offered at sale prices."

25.    Specifically, the CSS report identified two Best Buy products that were on sale 100% of the time:  a Samsung 24.6 cu. ft. side-by-side refrigerator with "Thru-the-Door Ice and Water," which was listed at a sale price for 44 out of the 44 weeks surveyed, and an LG 55" LED 2160p Smart 3D 4K Ultra HDTV, which was listed for sale for 10 weeks in a row before being discontinued.

---

[1]    The report of the CSS survey, "Sale Fail," can be found at http://www.checkbook.org/salefail/ (last accessed November 24, 2015).

26.     One representative item offered by Best Buy and tracked by CSS was never offered at the "regular" price during the course of the study.  CSS created a chart describing Best Buy's practices of offering for sale products at regular as opposed to  sales prices as follows:



C.      **Plaintiff's Purchases of Purported Sales Items**

27.     On or around June 15, 2015, Plaintiff began searching for a microwave appliance. Believing he was able to pay significantly less than what the microwave was worth and typically sells for in the retail marketplace, Plaintiff was induced to purchase a General Electric ("GE") branded microwave oven, listed by Best Buy as on sale for $179.99.  The purchase price was advertised as being $20 off the "regular" price of $199.99.

28.     Relying upon Defendants' misrepresentations and false and deceptive advertising, Plaintiff purchased a GE over-the-range microwave.  Defendants' marketing stated in red-backed, white lettering: "SALE LIMITED TIME ONLY."  However, the price which Plaintiff was induced to pay for the microwave had been offered by Best Buy for a time period in excess of the 90 days preceding Plaintiff's purchase.  Upon information and belief, the purported "regular" price and corresponding sale discount was false and misleading, as Defendants' prevailing retail price for the GE microwave during the three months immediately prior to

12

Plaintiff's purchase was not the $199.99 "regular" price advertised.  Plaintiff would not have purchased the microwave without the misrepresentations made by Defendants, or would not have paid as much for it as he did.  As a result, Plaintiff has been personally victimized by, and suffered economic injury, as a direct result of Defendants' unlawful, unfair, and fraudulent conduct.

29.     Defendants know that their comparative price advertising is false, deceptive, misleading, and unlawful under federal, Minnesota, California, and other state law.

30.     Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Classes the truth about their advertised prices and former prices.

31.     At all relevant times, Defendants have been under a duty to Plaintiff and members of the Classes to disclose the truth about their "regular" and former prices.

32.     Plaintiff relied upon Defendants' artificially inflated "regular" prices and false discounts when purchasing merchandise from Defendants.  Plaintiff would not have made such purchases but for Defendants' representations of fabricated "original" prices and false discounts.

33.     Plaintiff and members of the Classes reasonably and justifiably acted and relied on the substantial price differences that Defendants advertised, and made purchases believing that they were receiving a substantial discount on an item that did not have the value that Defendants claimed it had.  Plaintiff, like other Class members, was lured in by, damaged by, and relied on these pricing schemes that Defendants carried out.

34.     Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and members of the Classes to purchase merchandise in their retail stores.

## V.    CLASS ALLEGATIONS

35.    Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants (the "Nationwide Class"):

> All individuals residing in the United States and its territories who purchased one or more appliances from Defendants advertised or priced at a purported discount from an original retail price any time between October 29, 2009 and the present (the "Class Period").

36.    Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following subclass of persons located within the state of California (the "California Class"):

> All individuals residing in the State of California who purchased one or more items from Defendants advertised or priced at a discount from an original retail price any time between October 29, 2011 and the present (the "California Class Period").

37.    Excluded from the Classes are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all their past and present employees, officers, and directors.

38.    Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances or new facts obtained during discovery.

39.    This action is brought, and may properly be maintained, as a class action under Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

40.    ***Numerosity***:  The Class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Classes contain hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

41.    ***Existence and Predominance of Common Questions of Law and Fact***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.    whether, during the Class Period, Defendants used false "regular" or "original" price labels and falsely advertised price discounts on merchandise they sold in their retail stores;

b.    whether, during the Class Period, the "original" prices advertised by Defendants were the prevailing market prices for the respective merchandise during the three-month period preceding the dissemination and/or publication of the advertised former prices;

c.    whether Defendants' alleged conduct constitutes violations of the laws asserted;

d.    whether Defendants engaged in unfair, unlawful, or fraudulent business practices under the laws asserted;

e.    whether Defendants engaged in false or misleading advertising;

f.    whether Plaintiff and the Classes are entitled to damages and/or restitution and the proper measure of that loss; and

g.    whether an injunction is necessary to prevent Defendants from continuing to use false, misleading, or illegal price comparison.

42.    **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Classes.

43.    **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel experienced in complex consumer class-action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interest to those of the Classes.

44.    **Superiority**:  The nature of this action and the nature of laws available to Plaintiff and the Classes make the use of the class-action format a particularly efficient and appropriate procedure to afford relief to him and the Classes for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

45.    All Class members, including Plaintiff, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that "original" or

16

"regular" advertised prices had existed.  Due to the scope and extent of Defendants' consistent false "discount" price advertising scheme, disseminated in a years-long campaign to consumers via a number of different platforms, including in-store displays, Internet advertisements, and print advertisements, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Classes.  In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendants' false-advertising scheme when purchasing merchandise from Defendants.

46.    Defendants keep extensive computerized records of their customers through, *inter alia*, customer loyalty programs, co-branded credit cards, and general marketing programs. Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

### FIRST CAUSE OF ACTION

**Violation of Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. §325F.68, *et seq.***
**on Behalf of the Nationwide Class**

47.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

48.    Plaintiff brings this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

49.    Plaintiff purchased Best Buy merchandise for his own personal use.

50.     The acts and practices of Defendants as described above deceived Plaintiff and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

51.     The MPCFA makes illegal "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. §325F.69.

52.     The MPCFA does not require a showing of damage, and provides for liability "whether or not any person has in fact been misled, deceived, or damaged." *Id.*

53.     By committing the acts alleged above, Defendants have violated the MPCFA.

54.     Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that Best Buy merchandise was not, among other things, being offered at a significant discount; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

55.     In accordance with Minn. Stat. §325F.70, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; (2) requiring Defendants to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class damages and costs, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Minnesota Unlawful Trade Practices Act
### Minn. Stat §325D.09, *et seq.*
### on Behalf of the Nationwide Class

56.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

58.     Plaintiff purchased Best Buy merchandise for his own personal use.

59.     The acts and practices of Defendants as described above deceived Plaintiff and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

60.     The MUTPA provides that "[n]o person shall, in connection with the sale of merchandise at retail, or in, or in connection with the use of, samples, catalogs, or other forms of advertising listing merchandise for sale at retail, display price tags or price quotations in any form showing prices which are fictitiously in excess of the actual prices at which such merchandise is regularly and customarily sold at retail by such person or by the person issuing such samples, catalogs, or other forms of advertising."  Minn. Stat. §325D.12(3).

61.     The Minnesota legislature has found that such practices "mislead consumers into believing that they are buying merchandise at prices substantially below regular retail prices, when in fact they are not" and "that they constitute unfair and fraudulent competition and unsound and uneconomic methods of distribution."  Minn. Stat. §325D.09.

62.     By committing the acts alleged above, Defendants have violated the MUTPA.

63.     Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations because: (1) they were induced to purchase a product they would not have

498546.4

otherwise purchased if they had known that Best Buy merchandise was not, among other things, being offered at a significant discount; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

64.     In accordance with Minn. Stat. §325D.15, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; (2) requiring Defendants to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class damages and costs, including reasonable attorney's fees.

### THIRD CAUSE OF ACTION

**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. §325D.43, *et seq.***
**on Behalf of the Nationwide Class**

65.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

67.     Plaintiff purchased Best Buy merchandise for his own personal use.

68.     The acts and practices of Defendants as described above deceived Plaintiff and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

69.     The MUDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: [. . .] makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Minn. Stat. §325D.44, subd.1(11).

70.     By committing the acts alleged above, Defendants have violated the MUDTPA.

71.    Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that Best Buy merchandise was not, among other things, being offered at a significant discount; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

72.    In accordance with Minn. Stat. §325D.45, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; (2) requiring Defendants to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class costs, including reasonable attorney's fees.

### FOURTH CAUSE OF ACTION

**Violation of Minnesota False Statement in Advertising Act**
**Minn. Stat. §325F.67**
**on Behalf of the Nationwide Class**

73.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

74.    Plaintiff brings this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

75.    Plaintiff purchased Best Buy merchandise for his own personal use.

76.    The acts and practices of Defendants as described above deceived Plaintiff and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

77.    The MFSAA makes it unlawful to "publish[], disseminate[], circulate[], or place[] before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding

merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."  Minn. Stat. §325F.67.

78.    By committing the acts alleged above, Defendants have violated the MFSAA.

79.    Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that Best Buy merchandise was not, among other things, being offered at a significant discount; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

80.    In accordance with Minn. Stat. §325F.67, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; (2) requiring Defendants to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class damages and costs, including reasonable attorney's fees.

## FIFTH CAUSE OF ACTION

**Unjust Enrichment on Behalf of the Nationwide Class,
or in the Alternative, on Behalf of the California Class**

81.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

82.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, under Minnesota law.  Although there are numerous permutations of the elements of the unjust-enrichment cause of action in the various states, there are few substantial differences.  In all states, the focus of an unjust-enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements: (1) the

defendant received a benefit from the plaintiff, and (2) it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn, Minnesota law applies to the claims of the Nationwide Class.

83.    In the alternative, Plaintiff brings this claim individually as well as on behalf of the California Class under California law.  The alternative class period for this claim would be from October 29, 2011 to the present ("CA Unjust Enrichment Class Period").

84.    At all times relevant hereto, Defendants deceptively priced, marketed, advertised, and sold merchandise to Plaintiff and the Classes.

85.    Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments for merchandise that they would not have purchased if not for Defendants' deceptive pricing, advertising, and marketing.  Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and that reasonable consumers would have expected.

86.    Defendants have been unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because Defendants misrepresented, among other things, that their merchandise was being offered at a significant discount, which caused injuries to Plaintiff and members of the Classes because they paid a price premium due to the misleading pricing and advertising.

498546.4

87.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiff and members of the Classes for unjust enrichment, as ordered by the Court.

### SIXTH CAUSE OF ACTION

**Violation of Unfair Competition Law – Fraudulent Acts**
**Business & Professions Code §17200, *et seq*.**
**on Behalf of the California Class**

88.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

89.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

90.    The UCL imposes strict liability.  Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices, but only that such practices occurred.

91.    The harm to Plaintiff and California Class members outweighs the utility of Defendants' practices.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

92.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

93.    Defendants' acts and practices alleged above have deceived Plaintiff and are highly likely to deceive members of the consuming public.  Plaintiff relied on Defendants' fraudulent and deceptive representations regarding their "regular" and "discount" prices.  These

misrepresentations played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those products without Defendants' misrepresentations.

94. Defendants' violations of the UCL through their fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "regular" prices to "discount prices" that created merely phantom markdowns and led to financial damage for consumers, like Plaintiff and the California Class.

95. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

96. As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

## SEVENTH CAUSE OF ACTION

### Violation of Unfair Competition Law – Unlawful Acts
### Business & Professions Code §17200, *et seq*.
### on Behalf of the California Class

97. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

98. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

99. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

100. Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set

forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200, *et seq.*, the FTCA, 15 U.S.C. §45(a)(1) and 52(a), California Business & Professions Code §17500, and by violating the common law.

101.    By violating these laws, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

102.    Defendants' practices, as set forth herein, have misled Plaintiff, the California Class, and the general public in the past and will continue to mislead them in the future. Consequently, Defendants' practices constitute an unlawful business practice within the meaning of the UCL.

103.    Defendants' violations of the UCL through their unlawful business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "regular" prices to "discount prices" that created merely phantom markdowns and led to financial damage for consumers, like Plaintiff and the California Class.

104.    Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the California Class of all of Defendants' revenues associated with their unfair competition, or such portion of those revenues as the Court may find equitable.

## EIGHTH CAUSE OF ACTION

**Violation of Unfair Competition Law – Unfair Acts
Business & Professions Code §17200, *et seq*.
on Behalf of the California Class**

105.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

498546.4

106.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

107.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

108.    Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison advertising that represented false "regular" prices and "discount" prices that were nothing more than fabricated "regular" prices leading to phantom markdowns.  Defendants' acts and practices offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

109.    Defendants engaged, and continues to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, and 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) 15 U.S.C. §45(a)(1) and 52(a) against unfair or deceptive practices and false advertising; and (4) California Business & Professions Code §17500 against false advertising. Defendants gain an unfair advantage over their competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

110.    Defendants' conduct, including misrepresenting the pricing of their merchandise, is substantially injurious to consumers.  Such conduct has caused, and continues to cause,

substantial injury to consumers because consumers would not purchase their merchandise at all but for Defendants' false promotion of their merchandise as, among other things, being offered at a significant discount. Consumers have thus overpaid for Defendants' merchandise. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597–98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

111. By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

112. Plaintiff purchased Defendants' merchandise in reliance on Defendants' representations that their merchandise is, among other things, being offered at a significant discount. Plaintiff would not have purchased their merchandise at all but for Defendants' false promotion that their merchandise is, among other things, being offered at a significant discount. Plaintiff and the California Class have all paid money for Defendants' merchandise. However, Plaintiff and the California Class did not obtain the full value of the advertised product due to Defendants' misrepresentations regarding the nature of said products. Accordingly, Plaintiff and the California Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

113.    In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through their fraudulent conduct and further seeks an order requiring Defendants to conduct a corrective advertising campaign.

114.    As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

## NINTH CAUSE OF ACTION

**Violation of the California False Advertising Law,**
**California Business & Professions Code §17500, *et seq.***
**on Behalf of the California Class**

115.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

116.    Cal. Bus. & Prof. Code §17500 provides that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

117.    The "intent" required by Cal. Bus. & Prof. Code §17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

118.    Similarly, this section provides, "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless

the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code §17501.

119.    Defendants' routine of advertising "regular" sales prices associated with their merchandise, which were never the true prevailing prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were, thereby leading to the false impression that the merchandise was worth more than it actually was.

120.    Defendants misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Civil Code, as alleged above.

121.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and California Class members have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all California Class members, and to enjoin Defendants from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiff, California Class members, and the broader general public will be irreparably harmed and denied an effective and complete remedy.

## TENTH CAUSE OF ACTION
### Violations of the CLRA on Behalf of the California Class

122.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

123.    This cause of action is brought pursuant to the CLRA, California Civil Code §1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by

498546.4

California Civil Code §1761(d). Defendants' sales of merchandise to Plaintiff and the California Class were "transactions" within the meaning of California Civil Code §1761(e). The products purchased by Plaintiff and the California Class are "goods" within the meaning of California Civil Code §1761(a). The class period for this claim is from October 29, 2012 to the present ("CLRA Class Period").

124.    Defendants violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of merchandise:

      a.    representing that their merchandise has characteristics, uses, and/or benefits, which they do not;

      b.    advertising goods or services with intent not to sell them as advertised;

      c.    making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

125.    Plaintiff and the California Class suffered injuries caused by Defendants' misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that Defendants' merchandise was not, among other things, being offered at a significant discount; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Defendants' merchandise.

126.    Pursuant to §1782(a) of the CLRA, on October 28, 2015, Plaintiff's counsel notified Defendant Best Buy Co., Inc. in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant Best Buy Co., Inc.'s intent

to act. Defendant Best Buy Co., Inc. failed to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782.

127.    Plaintiff and the California Class members are entitled to an order, pursuant to California Civil Code §1780, enjoining the above-described wrongful acts and practices of Defendants, the payment of costs and attorneys' fees, damages, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Classes, requests that this Court award relief against Defendants as follows:

A.    Certifying the class and designating Plaintiff as the Class Representative, and his counsel as Class Counsel;

B.    Awarding Plaintiff and the proposed Class members damages;

C.    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of their unlawful, unfair, and fraudulent business practices described herein;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money it is required to pay;

E.    Requiring Defendants to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs; and

G.    Granting such other and further relief as the Court may deem necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: December 1, 2015              *s/ Karen Hanson Riebel*
                                     Karen Hanson Riebel (MN #219770)
                                     Eric N. Linsk (MN #388827)
                                     Kate M. Baxter-Kauf (MN #392037)
                                     LOCKRIDGE GRINDAL NAUEN P.L.L.P
                                     100 Washington Avenue South, Suite 2200,
                                     Minneapolis, MN 55401
                                     Telephone: 612-339-6900
                                     Facsimile:  612-339-0981
                                     khriebel@locklaw.com
                                     rnlinsk@locklaw.com
                                     kmbaxter-kauf@locklaw.com

                                     SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                     Joseph P. Guglielmo (NY 275989)
                                     jguglielmo@scott-scott.com
                                     Erin Green Comite (CT 420630)
                                     ecomite@scott-scott.com
                                     Joseph Pettigrew (CA 236933)
                                     jpettigrew@scott-scott.com
                                     The Chrysler Building
                                     405 Lexington Avenue, 40th Floor
                                     New York, NY 10174
                                     Telephone: 212-223-6444
                                     Facsimile: 212-223-6334

                                     CARPENTER LAW GROUP
                                     Todd D. Carpenter
                                     todd@carpenterlawyers.com
                                     402 West Broadway, 29th Floor
                                     San Diego, California 92101
                                     Telephone: 619.756.6994
                                     Facsimile: 619.756.6991

498546.4

CARLSON LYNCH SWEET & KILPELA, LLP
Gary F. Lynch
Edwin J. Kilpela, Jr.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-253-6307

WOOD LAW FIRM, LLC
E. Kirk Wood
ekirkwood1@bellsouth.net
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile: 866-747-3905

*Attorneys for Plaintiff Randy Nunez, on Behalf of
Himself and All Others Similarly Situated*

498546.4