## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RANDY NUNEZ, on behalf of himself and all others similarly situated, | Case No. 15-cv-3965 (DWF/SER) |
| Plaintiff, | |
| vs. | |
| BEST BUY CO., INC., a Minnesota corporation, and BEST BUY STORES, L.P., a Virginia limited partnership, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR
ALTERNATIVELY, TO STRIKE PORTIONS OF
THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................... 1

BACKGROUND FACTS ............................................................................... 3

ARGUMENT ................................................................................................. 4

I.  PLAINTIFF HAS ARTICLE III STANDING AND APPLICATION OF
    MINNESOTA LAW COMPORTS WITH DUE PROCESS AND CHOICE
    OF LAW PRINCIPLES ............................................................................ 4

    A.  Plaintiff Has Article III Standing ..................................................... 4

    B.  Plaintiff Has Standing to Pursue the Claims Alleged on Behalf of
        the Proposed Putative Classes .......................................................... 4

    C.  Application of Minnesota Law Comports with Due Process and Does Not
        Violate Choice of Law Rules ............................................................ 7

        1.  The Minnesota Consumer Protection Statutes Were Intended to Be Applied
            Extraterritorially ........................................................................ 8

        2.  Application of the Minnesota Consumer Protection Statutes to Plaintiff's
            Claims Comports with Due Process and Does Not Violate Choice of Law
            Rules ........................................................................................ 12

II.  PLAINTIFF PLAUSIBLY STATES CLAIMS UNDER MINNESOTA
     CONSUMER PROTECTION STATUTES AND COMMON LAW ...................... 16

     A.  Plaintiff States Claims for Violation of the MCFA and MFSAA ................. 16

     B.  Plaintiff States Claims for Violation of the MUTPA and MDTPA ................ 17

     C.  Plaintiff States a Claim for Unjust Enrichment under Minnesota Law ........... 20

III.  PLAINTIFF PLAUSIBLY STATES CLAIMS UNDER CALIFORNIA
      CONSUMER PROTECTION STATUTES AND COMMON LAW ...................... 21

      A.  Plaintiff Has Statutory Standing to Assert His UCL Claims ........................ 21

      B.  Plaintiff Has Standing to Assert Claims for Injunctive Relief and for
          Restitution under the UCL, CLRA, and FAL ....................................... 23

          1.  Injunctive Relief ....................................................................... 24

          2.  Restitution ............................................................................... 25

      C.  Plaintiff States a Claim for Unjust Enrichment under California Law ........... 27

  D. Plaintiff's Pre-Suit CLRA Notice Is Adequate ................................................. 29

IV. PLAINTIFF'S CLAIMS ARE PLED WITH SUFFICIENT PARTICULARITY ..... 33

V. DEFENDANTS' MOTION TO STRIKE IS PREMATURE AND SHOULD BE DENIED ...................................................................................................... 35

  A. Plaintiff's Class Allegations Should Not Be Stricken ..................................... 35

  B. Nationwide Application of Minnesota's Consumer Protection Statutes Is Appropriate .............................................................................................. 38

  C. Defendant Has Failed to Demonstrate that Plaintiff's Claims Cannot Satisfy Rule 23(b)(3) Predominance ............................................................. 39

CONCLUSION ............................................................................................... 41

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee*,
  687 F. Supp. 2d 884 (D. Minn. 2009) ........................................................ 16

*Aguilar v. Boulder Brands, Inc.*,
  12 CV 01862 BTM (BGS), 2013 WL 2481549 (S.D. Cal. June 10, 2013) ................. 6

*Allen v. Similasan Corp.*,
  No. 12 CV 0370, BTM-WMC, 2013 WL 5436648 (S.D. Cal. Sept. 27, 2013) ......... 32

*Arnold v. Cargill Inc.*,
  No. 012086, 2002 WL 1576141 (D. Minn. July 15, 2002) ....................................... 11

*Arroyo v. TP-Link USA Corp.*,
  No. 5:14 CV 04999 EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) .................. 24

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...................................................................... 28

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ................................................................. 25

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) .................................................................... 36

*Barron v. S. Dakota*,
  No. CIV. 09-4111, 2010 WL 9524819 (D.S.D. Sept. 30, 2010) ................................. 8

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) .................................................................... 40

*BJC Health Sys. v. Columbia Cas. Co.*,
  478 F.3d 908 (8th Cir. 2007) ............................................................... 33, 34

*Blue Cross & Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*,
  No. 11-2529, 2012 WL 1343147 (D. Minn. Apr. 18, 2012) .......................... 16, 18, 19

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012) ......................................................... 32

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2013) ................................................................ 23

iii

*C.H. Robinson Worldwide, Inc. v. Ghirardelli Chocolate Co.*,
No. 03-2978 (JRT/FL), 2004 WL 1630873 (D. Minn. July 19, 2004) ...................... 22

*Capital Midwest Fund, LP v. Johnson*,
No. A13-2023, 2014 WL 3396580 (Minn. App. July 14, 2014) .......................... 18, 19

*Cardenas v. NBTY, Inc.*,
870 F. Supp. 2d 984 (E.D. Cal. 2012) ....................................................................... 33

*Carlson v. A.L.S. Enter., Inc.*,
No. 07-3970, 2008 WL 185710 (D. Minn. Jan.18, 2008) ......................................... 33

*Cattie v. Wal-Mart Stores, Inc*.,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................... 32

*Chin v. Gen. Mills, Inc.*,
No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013) ......................................... 5

*Cohen v. DIRECTV, Inc*.,
178 Cal. App. 4th 966 (Cal. Ct. App. 2009) ............................................................. 40

*Collins v. Minn. Sch. of Bus., Inc.*,
655 N.W.2d 320 (Minn. 2003) ................................................................................. 16

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*,
61 F.3d 639 (8th Cir. 1995) ...................................................................................... 33

*Conrad v. Nutramax Labs., Inc.*,
No. 13 C3780, 2013 WL 5288152 (N.D. Ill. Sept. 18, 2013)...................................... 5

*Contreras v. Johnson & Johnson Consumer Companies, Inc.*,
No. CV 12-7099-GW (SHX), 2012 WL 12096581 (C.D. Cal. Nov. 29, 2012) ........... 5

*Corra v. Energizer Holdings, Inc.*,
962 F. Supp. 2d 1207 (E.D. Cal. 2013)............................................................... 30, 32

*Cruz v. Lawson Software, Inc.*,
No. 08-5900, 2010 WL 890038 (D. Minn. Jan. 5, 2010) ......................................... 13

*Curtis v. Altria Group, Inc.*,
813 N.W.2d 891 (Minn. 2012)................................................................................... 9

*Daigle v. Ford Motor Co.*,
713 F. Supp. 2d 822 (D. Minn. 2010) ...................................................................... 20

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................................ 22

*Davis-Miller v. Auto. Club of S. California*,
   201 Cal. App. 4th 106 (2011) ................................................ 40

*Dinosaur Dev., Inc. v. White*,
   216 Cal. App. 3d 1310 (1989) ................................................ 29

*Everett v. Mountains Recreation & Conservancy Auth.*,
   239 Cal. App. 4th 541 (2015) ................................................ 27

*F.D.I.C. v. Dintino*,
   167 Cal. App. 4th 333 (2008) ................................................ 28

*Ferrari v. Best Buy Co. Inc.*,
   No. 14-2965, 2015 WL 2242128 (D. Minn. May 12, 2015) ................................... 5, 11

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999, 1017 (N.D. Cal. 2014) ................................................ 32

*Garcia v. Sony Computer Entn't. Am., LLC*,
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................ 21

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) ................................................ 28

*Giesmann v. American Homepatient, Inc.*,
   No. 4:14 CV 1538 RLW, 2015 WL 3548803 (E.D. Mo. June 8, 2015) ..................... 39

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ................................................ 22

*Hale v. Enerco Grp., Inc.*,
   No. 1:10 CV 00867-DAP, 2011 WL 49545 (N.D. Ohio Jan. 5, 2011) ..................... 7

*Halvorson v. Auto-Owners Ins. Co.*,
   718 F.3d 773 (8th Cir. 2013) ................................................ 36

*Henderson v. Gruma Corp.*,
   No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................. 24

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009) ................................................ 28

*Herron v. Best Buy Stores, L.P.*,
　No. 12-cv-02103 GEB-JFM, 2014 WL 2462969 (E.D. Cal. May 29, 2014) ........ 32, 33

*Hinojos v. Kohl's Corp.*,
　718 F.3d 1098 (9th Cir. 2013) ................................................................. 1

*Hirsch v. Bank of Am., N.A.*,
　107 Cal. App. 4th 708 (2003) ................................................................. 28

*Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*,
　580 F.3d 755 (8th Cir. 2009) ................................................................. 8

*Hoyt v. Marriott Vacations Worldwide Corp.*,
　No. 12-3093, 2014 WL 509903 (D. Minn. Feb. 7, 2014) ........................... 34

*In re Apple In-App Purchase Litig.*,
　855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................. 31

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
　78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................... 15

*In re Hardieplank Fiber Cement Siding Litig.*,
　No. 12-md-2359, 2013 WL 3717743 (D. Minn. July 15, 2013) ................. 13

*In re Levaquin Prods. Liab. Litig.*,
　752 F. Supp. 2d 1025 (D. Minn. 2010) ................................................. 16

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
　No. 99-MD-1309, 2004 WL 909741 (D. Minn. Apr. 28, 2004) ................. 10

*In re Magnesium Oxide Antitrust Litig.*,
　No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ............... 15

*In re Nat'l. Hockey League Players' Concussion Injury Litig.*,
　MDL No. 14-2551 SRN, 2015 WL 1334027 (D. Minn. Mar. 25, 2015) ....... 13

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
　MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) ..................... 38

*In re St. Jude Med., Inc.*,
　425 F.3d 1116 (8th Cir. 2005) ................................................... 11, 12, 14

*In re Syngenta AG MIR 162 Corn Litig.*,
　No. MDL 2591, 2015 WL 5607600 (D. Kan. Sept. 11, 2015) ................... 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) ............................................................. 12, 15, 39

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ....................................................... 11

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) .................................................................. 26

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
No. 13-2644, 2014 WL 943224 (D. Minn. Mar. 11, 2014) ....................... 11

*Jogani v. Superior Court*,
165 Cal. App. 4th 901 (2008) .................................................................. 27

*Johns v. Bayer Corp.*,
No. 09 CV 1935 AJB (DHB), 2012 WL 1520030 (S.D. Cal. Apr. 30, 2012) ............ 25

*Johns v. Bayer Corp.*,
No. 09 CV 1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ................ 5

*Kennedy v. Natural Balance Pet Foods, Inc.*,
No. 07-CV-1082 H (RBB), 2007 WL 2300746 (S.D. Cal. Aug. 7, 2007) ................ 29

*Khoday v. Symantec Corp.*,
858 F. Supp. 2d 1004 (D. Minn. 2012) ........................................... 10, 16, 20

*Khoday v. Symantec Corp.*,
No. 11-180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) .................... 4, 37

*Kinetic Co. v. Medtronic, Inc.*,
672 F. Supp. 2d 933 (D. Minn. 2009) ............................................ 13, 18, 34

*Laughlin v. Target Corp.*,
No. 12-489, 2012 WL 3065551 (D. Minn. July 27, 2012) .................. *passim*

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .................................................................. 21

*LePage v. Blue Cross & Blue Shield of Minnesota*,
No. 08-584, 2008 WL 2570815 (D. Minn. June 25, 2008) ......................... 20

*Lucky Auto Supply v. Turner*,
244 Cal. App. 2d 872 (1966) .................................................................. 28

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................ 4

*Maher v. Sempris, LLC*,
  No. 13-2202 ADM/JJK, 2014 WL 4749186
  (D. Minn. Sept. 24, 2014) .................................... 10, 13, 15, 39

*Mason v. Nature's Innovation, Inc.*,
  No. 12 CV 3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13, 2013) .......... 24

*Mazza v. American Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ........................................... 12, 40

*McIvor v. Credit Control Servs.*,
  773 F.3d 909 (8th Cir. 2014) ............................................... 8

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ........................................... 27, 28

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) .............................................. 38

*Milkovich v. Saari*,
  295 Minn. 155 (1973) ..................................................... 14

*Miller v. Fuhu Inc.*,
  No. 2:14-cv-06119-CAS-A-S, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015).............. 23

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................... 6, 30

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
  244 F.R.D. 531 (D. Minn. 2007).................................... 14, 15, 39

*Morgan v. AT & T Wireless Serv., Inc.*,
  177 Cal. App. 4th 1235 (2009) ......................................... 31, 32

*Moua v. Jani-King of Minnesota, Inc.*,
  613 F. Supp. 2d 1103 (D. Minn. 2009)...................................... 35

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006) .......................................... 22, 23

*Olson v. Push, Inc.*,
  No. 14-1163 ADM/JJK, 2014 WL 4097040
  (D. Minn. Aug. 19, 2014) ................................................. 11

*Oxina v. Lands' End, Inc.*,
No. 14 CV 2577-MMA (NLS), 2015 WL 4272058 (S.D. Cal. June 19, 2015) ......... 24

*People v. Wahl*,
39 Cal. App. 2d Supp. 771 (1940) ................................................................... 21

*Perras v. H & R Block*,
789 F.3d 914 (8th Cir. 2015) .......................................................................... 11

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) .......................................................................... 37

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ..................................................................... 26, 27

*Richardson v. L'Oreal USA, Inc.*,
991 F. Supp. 2d 181 (D.D.C. 2013) ................................................................ 24

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ................................................................... 23

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ........................................................................... 38

*Russell v. Kohl's Dep't Stores, Inc.*,
No. 5:15-CV 01143-RGK-SP (C.D. Cal. Oct. 6, 2015) ................................. 20, 24, 25

*Russell v. Kohl's Dep't Stores, Inc.*,
No. 5:15-cv-01143-RGK-SP (C.D. Cal. Dec. 4, 2015) ..................................... 24

*Ruszecki v. Nelson Bach USA Ltd.*,
No. 12-cv-495-L (NLS), 2015 WL 6750980 (S.D. Cal. June 25, 2015) ................... 32

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ........................................................................ 29

*Seifi v. Mercedes-Benz USA, LLC*,
No. C12-5493-JEH, 2013 WL 5568449 (N.D. Cal. Oct. 9, 2013) .......................... 32

*Select Comfort Corp. v. The Sleep Better Store, LLC*,
796 F. Supp. 2d 981 (D. Minn. 2011) .............................................................. 35

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
11 F. Supp. 3d 933, 937 (D. Minn. 2014) ........................................................ 19

*Soular v. N. Tier Energy LLC,*
 Civ. No. 15 CV 556, 2015 WL 5024786 (D. Minn. Aug. 25, 2015) .......................... 36

*Spann v. J.C. Penney Corp.,*
 307 F.R.D. 508 (C.D. Cal. 2015) ....................................................... *passim*

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.,*
 No. 4:15 CV 517 RLW, 2015 WL 9451046 (E.D. Mo. Dec. 23, 2015) .................... 38

*Stanbury Law Firm, P.A. v. IRS,*
 221 F.3d 1059 (8th Cir. 2000) ....................................................... 36

*State by Humphrey v. Philip Morris Inc.,*
 551 N.W.2d 490 (Minn. 1996) ....................................................... 9

*State by Humphrey v. Alpine Air Prods., Inc.,*
 No. C5-90-6972, 1999 WL 34788335 (Minn. Dist. Nov. 22, 1991) .......................... 10

*Sybersound Records, Inc. v. UAV Corp.,*
 517 F.3d 1137 (9th Cir. 2008) ....................................................... 22

*Tyler v. Alltel Corp.,*
 265 F.R.D. 415 (E.D. Ark. 2010) ....................................................... 13

*US v. St. Luke's Hosp., Inc.,*
 441 F.3d 552 (8th Cir. 2006) ....................................................... 33

*Walker v. World Tire Corp., Inc.,*
 563 F.2d 918 (8th Cir. 1977) ....................................................... 36

*Wehlage v. EmpRes Healthcare Inc.,*
 No. C10-5839 CW, 2012 WL 380364 (N.D. Cal. Feb. 6, 2012) .......................... 32

*Wiegand v. Walser Auto. Grps., Inc.,*
 683 N.W.2d 807 (Minn. 2004) ....................................................... 37

STATUTES, RULES, AND REGULATIONS

Federal Rules of Evidence
 Rule 9(b) ....................................................... 33, 34, 35
 Rule 23 ....................................................... 39
 Rule 23(b)(3) ....................................................... 39
 Rule 201(b)(2) ....................................................... 8

Code of Federal Regulations
 16 C.F.R. §233.1(a) ....................................................... 2

Cal. Bus. & Prof. Code

§17200 ............................................................................................................ 2

§17500 ............................................................................................................ 2

Cal. Civ. Code

§1750 ............................................................................................................. 2

§1781(a)(1)-(2) ............................................................................................. 30

§1782(c) ....................................................................................................... 30

§1782(d) ................................................................................................. 29, 30

Minn. Stat.

§8.31, subds. 1, 3a ......................................................................................... 8

§325D.09 ......................................................................................................... 2

§325D.12(3) .................................................................................................... 1

§325D.43 ......................................................................................................... 2

§325D.44, subd. 1(11) .................................................................................... 1

§325D.45 ......................................................................................................... 9

§325F.67 ......................................................................................................... 2

§325F.68 ......................................................................................................... 2

## SECONDARY AND OTHER AUTHORITIES

Douglas L. Johnson, Neville L. Johnson, *What Happened to Unjust Enrichment in California? The Deterioration of Equity in the California Courts*, 44 LOY. L.A. L. REV. 277 (2010) ............................................................................ 27

Plaintiff Randy Nunez ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint or Alternatively, to Strike Portions of the First Amended Complaint (ECF No. 25) filed by Defendants Best Buy Co., Inc. and Best Buy Stores, L.P. ("Best Buy" or "Defendants").

## INTRODUCTION

Minnesota-based Best Buy targets retail consumers with a nationwide marketing campaign that advertises its merchandise at an often significant mark down from the "original" or "regular" item price. Such marketing schemes have an obvious purpose: to drive consumers to the store with the promise of a good deal. That "good deal" at Best Buy, however, is frequently illusory. As described by the Ninth Circuit:

> Most consumers have, at some point, purchased merchandise that was marketed as being "on sale" because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher "original" price in order to induce customers to purchase merchandise at a purportedly marked-down "sale" price. Because such practices are misleading – and effective – the California legislature has prohibited them.

*Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1101 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). The Minnesota Legislature similarly has sought to protect the public from such deception in advertising through Minnesota's consumer protection statutes. *See, e.g.*, Minn. Stat. §325D.44, subd. 1(11) ("A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions[.]"); Minn. Stat. §325D.12(3) ("No person

1

shall, in connection with the sale of merchandise at retail, . . . display price tags or price quotations in any form showing prices which are fictitiously in excess of the actual prices at which such merchandise is regularly and customarily sold at retail by such person . . . .").  The Federal Trade Commission ("FTC") has described such misleading discount pricing schemes as deceptive.  *See* 16 C.F.R. §233.1(a).

Plaintiff alleges that he was a victim of Defendants' deceptive discount pricing scheme, buying merchandise from Defendants that he would not have purchased had he not been misled by representations stating that the merchandise was marked down from a fictitious "original" or "regular" price.  ¶¶9, 27.[1]  Thus, Plaintiff alleges that he lost money as a result of Defendants' deceptive discount pricing scheme.  ¶¶9, 28.  Seeking injunctive relief, restitution, and damages (Prayer for Relief, ¶¶B-E), Plaintiff filed this putative class action, alleging violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.09, *et seq.* ("MUTPA"); the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43, *et seq.* ("MDTPA"); the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F.68, *et seq.* ("MCFA"); the Minnesota False Statement in Advertisement Act, Minn. Stat. §325F.67 ("MFSAA") on behalf of a nationwide class (¶¶47-80), and violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.* ("FAL"); and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA") on behalf of a California class.  ¶¶88-127.

---

[1]    Unless otherwise noted, all ¶ and ¶¶ refer to the First Amended Class Action Complaint ("FAC"), ECF No. 22.

Plaintiff also brings an unjust enrichment claim on behalf of a nationwide class, or in the alternative, a California class. ¶¶81-87.

Defendant Best Buy Co., Inc. is incorporated in Minnesota, Defendants' executive officers are located in Minnesota, and the discount pricing scheme that applied to all of Defendants' products was disseminated from Minnesota to injure consumers nationwide. Notwithstanding Defendants' premature, fact-intensive attacks, Plaintiff has adequately alleged the elements required to demonstrate that he has Article III standing to pursue these claims individually and on behalf of proposed classes and that application of Minnesota law comports with Due Process and choice of law principles. As discussed in detail below, Plaintiff also has adequately stated his claims. Therefore, Defendants' motion to dismiss should be denied. Furthermore, Defendants' motion to strike Plaintiff's class allegations is premature and meritless, and thus, also should be denied.

## BACKGROUND FACTS

Defendants distribute and sell technology-focused products, services, and solutions throughout the United States, and are headquartered in Richfield, Minnesota. ¶¶15-16. Plaintiff, a California resident, purchased merchandise at a Best Buy retail store that was advertised as being substantially reduced from its "regular" price, but that was, in reality, routinely sold by Best Buy at the advertised "sale" price rather than the purported "regular" price. ¶¶14, 27-28. In other words, the advertised "regular" price of Best Buy's merchandise is fictitious in that the "regular" price does not reflect prevailing retail market price. ¶¶2, 28. Plaintiff alleges that he relied on Defendants' deceptive advertisements in deciding to purchase merchandise from Best Buy and that he would not

3

have purchased such merchandise from Best Buy in the absence of Best Buy's misrepresentations. ¶¶9, 28, 32-33, 125.

## ARGUMENT

**I.** **PLAINTIFF HAS ARTICLE III STANDING AND APPLICATION OF MINNESOTA LAW COMPORTS WITH DUE PROCESS AND CHOICE OF LAW PRINCIPLES**

### A. Plaintiff Has Article III Standing

Defendants do not dispute that Plaintiff has alleged an injury-in-fact caused by Defendants' conduct – that is, the loss of money he would not have spent but for Defendants' alleged deceptive discount pricing scheme. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (to demonstrate standing "the plaintiff must have suffered an 'injury in fact'" and "there must be a causal connection between the injury and ***the conduct*** complained of").[2]  It also cannot be reasonably disputed that this injury would be redressed by a favorable ruling from this Court in the form of damages, restitution, and/or injunctive relief. *See id.*, at 561.  Therefore, Plaintiff satisfies the Article III standing requirements. *See*, *e.g.*, *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), 2014 WL 1281600, at *34 (D. Minn. Mar. 13, 2014).

### B. Plaintiff Has Standing to Pursue the Claims Alleged on Behalf of the Proposed Putative Classes

While Defendants concede that Plaintiff has satisfied the foregoing standing elements, they argue that Plaintiff lacks standing to represent classes of consumers whose products he did not purchase and whose advertisements he did not read.  MTD at 5-9.

---

[2]    Unless otherwise noted, citations are omitted and emphasis is added.

But Best Buy begins from a mistaken premise. Plaintiff's suit is not, as Best Buy incorrectly believes, about challenging a misrepresentation found only on the microwave he purchased, nor is it about misrepresentations regarding the true nature or quality of certain products. Instead, Plaintiff challenges Defendants' misleading and deceptive price comparison scheme, which **uniformly** applies to each and every product and advertisement at issue. ¶¶3-4, 27-28, 45. The focus is thus not on a particular product's shortcomings (the microwave may well be in perfect working order); rather, the focus is on the improper manner in which **all products** were held out for sale. For this reason, Defendants' argument cannot stand.

Defendants rely primarily on two cases, *Ferrari v. Best Buy Co. Inc.*, No. 14-2965 (MJD/FLN), 2015 WL 2242128 (D. Minn. May 12, 2015) and *Chin v. Gen. Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 WL 2420455 (D. Minn. June 3, 2013), and to a lesser extent *Conrad v. Nutramax Labs., Inc.*, No. 13 C3780, 2013 WL 5288152 (N.D. Ill. Sept. 18, 2013), *Contreras v. Johnson & Johnson Consumer Companies, Inc.*, No. CV 12-7099-GW (SHX), 2012 WL 12096581 (C.D. Cal. Nov. 29, 2012), and *Johns v. Bayer Corp.*, No. 09 CV 1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010). *See* ECF No. 27, Defendants' Memorandum In Support Of Their Motion To Dismiss The First Amended Complaint Or Alternatively, To Strike Portions Of The First Amended Complaint ("MTD") at 6-8. These cases are inapposite, for two reasons. First, standing issues arise in the cited cases because the products and advertisements at issue varied considerably from one another. Those same standing concerns are not present where, as here, a uniform, across-the-board practice is being challenged. ¶45. Plaintiff's and the

5

Classes' claims derive entirely from Defendants' deceptive discount pricing scheme based on fictitious "regular" prices, and thus, differences between products and advertisements are irrelevant and not a basis to dismiss. *See Aguilar v. Boulder Brands, Inc.*, No. 12 CV 01862 BTM (BGS), 2013 WL 2481549, at *2-3 (S.D. Cal. June 10, 2013) (finding plaintiff had standing despite not purchasing two other products because of "overall advertising campaign"). Second, the cases are factually distinguishable, addressing only whether a specific product's qualities and characteristics are accurately advertised. Again, Plaintiff's claims are based on Defendants' uniform deceptive pricing scheme, which affects all merchandise equally. ¶45.

Courts addressing similar deceptive discount pricing scheme cases have rejected the same argument Defendants now raise. For example, the court in *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 533 (C.D. Cal. 2015) certified a class of consumers who had purchased **any** of the defendant retailer's "private or exclusive branded items of apparel or accessories," explaining: "While the trial evidence may concern different private branded items, the common questions of whether defendant's price-comparison advertising scheme resulted in false price comparisons that deceived consumers remains across all of defendant's private and exclusive branded items." *Id.* at 518. Even in non-price comparison cases, courts have relied on similar reasoning in denying motions to dismiss for lack of standing. *See Aguilar*, 2013 WL 2481549, at *3 (holding that the plaintiff had standing for products she did not purchase, noting the crucial difference between a claim based on "specific representation on only one product" and a claim based on an "overall advertising campaign"); *Miller v. Ghirardelli Chocolate Co.*, 912 F.

6

Supp. 2d 861, 869 (N.D. Cal. 2012) (noting that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."); *Hale v. Enerco Grp., Inc.*, No. 1:10 CV 00867-DAP, 2011 WL 49545, at \*3 (N.D. Ohio Jan. 5, 2011) (plaintiffs had standing even for models they did not purchase because defendants "engaged in fraudulent conduct with regard to all models").  Therefore, at this stage, Plaintiff has standing on behalf of the proposed classes.

### C.    Application of Minnesota Law Comports with Due Process and Does Not Violate Choice of Law Rules

Defendants argue that because Plaintiff is a California resident, who purchased merchandise from Best Buy in California, Plaintiff lacks standing to sue under Minnesota law.  While often discussed in terms of "standing," this is not strictly a standing issue. The proper questions are: (i) did the Minnesota Legislature intend the statutes at issue to be applied extraterritorially; (ii) does application of Minnesota law comport with Due Process under the specific facts of this case; and (iii) is application of Minnesota law consistent with choice of law rules?  Where Defendant Best Buy Co., Inc. has manifested an intent to be bound by Minnesota law by being incorporated in Minnesota and both Defendants are headquartered in Minnesota (¶¶15-16; Declaration of Joseph P. Guglielmo ("Guglielmo Decl."), ¶¶9-18 and Exs. E-N)[3] and are alleged to have

---

[3]    Plaintiff's counsel's investigation reveals that the relevant decision-making employees are employed by Best Buy Co., Inc. and are located in Minnesota.  Guglielmo

disseminated from Minnesota a single deceptive pricing scheme that is uniformly applied to consumers nationwide (¶¶42, 45), the answer to all three questions at this early pleading stage is: "Yes."

### 1. The Minnesota Consumer Protection Statutes Were Intended to Be Applied Extraterritorially

The statutory text as well as the Minnesota Attorney General's own interpretation of the statutes support that the Minnesota Legislature intended the Minnesota consumer protection statutes to govern Minnesota corporations – regardless of where the effects of the alleged misconduct occur. The MCFA, MFSAA, and MUTPA are enforced through the so-called "Private AG Statute," which states that "*any person* injured by a violation [of these statutes] may bring a civil action and recover damages [.]" Minn. Stat. §8.31, subds. 1, 3a. Similarly, the MDTPA extends its protection to any person "likely to be

---

Decl., ¶¶4, 9-18 and Exs. E-N. Thus, although wholly-owned subsidiary Best Buy Stores, L.P. is incorporated in Virginia, it is Minnesota-incorporated Best Buy Co. Inc. whose actions are most relevant to this analysis. *See id.*, ¶9 and Ex. E (Best Buy Co., Inc. Form 10-K states: "Domestic Segment Merchandise selection, pricing and promotions, procurement and supply chain, marketing and advertising, and labor deployment across all channels *are centrally managed at our corporate headquarters*. In addition, support capabilities (*e.g.*, human resources, finance and real estate management) are generally performed at our corporate headquarters.").

Pursuant to Federal Rule of Evidence 201(b)(2), Plaintiff respectfully requests that the Court take judicial notice of the documents attached to the Guglielmo Declaration and their contents. *See*, *e.g.*, *McIvor v. Credit Control Servs.*, 773 F.3d 909, 914 (8th Cir. 2014) (courts make take judicial notice of court records); *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009) (taking judicial notice of public SEC filings); *Barron v. S. Dakota*, No. CIV. 09-4111, 2010 WL 9524819, at *3 (D.S.D. Sept. 30, 2010), *aff'd sub nom. Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787 (8th Cir. 2011) ("It is not uncommon for courts to take judicial notice of factual information found on web sites.").

damaged by a deceptive trade practice." *See* Minn Stat. 325D.45. Interpreting these statutes, the Minnesota Supreme Court has declared that "[s]tatutory grants of standing are quite [ ] broad as to consumer protection." *State by Humphrey v. Philip Morris Inc*., 551 N.W.2d 490, 496 (Minn. 1996). Indeed, the Minnesota Supreme Court has commented that Minnesota consumer protection statutes "reflect a clear legislative policy encouraging ***aggressive prosecution*** of statutory violations," and therefore, "are generally very broadly construed to enhance consumer protection." *Id.* at 495, 496.

Defendants cite *Curtis v. Altria Group, Inc.*, 813 N.W.2d 891 (Minn. 2012) for its argument that only Minnesota residents may sue under the state's consumer protection statutes (MTD at 12-13), but the Minnesota Supreme Court in *Curtis* did ***not*** hold that consumer statutes can only be enforced (whether by the attorney general or private plaintiffs) to benefit only Minnesota residents, and no court has cited *Curtis* for that proposition. Quite to the contrary, as the Minnesota Attorney General's Office has explained in *St. Jude Medical* and other cases, Minnesota courts have long employed the consumer protection statutes to remedy deceptive conduct emanating from Minnesota to consumers nationwide. *See* Guglielmo Decl., Ex. A, Amicus Curiae Brief of State of Minnesota in Support of Affirming the District Court and in Support of Respondents Grovatt, *In re St. Jude Med., Inc., Silzone (R) Heart Valve Prods. Liab. Litig.*, No. 04-3117, 2004 WL 5355224 (8th Cir. Dec. 6, 2004) ("AGO St. Jude Brief").

For instance, in *State by Humphrey v. Alpine Air Products, Inc.*, the Minnesota Attorney General obtained a judgment at trial requiring restitution to all purchasers of the defendant's air-purifier product regardless of whether the purchaser was a Minnesota

resident, despite the defendant's contention that other state laws vary. *State by Humphrey v. Alpine Air Prods., Inc.*, No. C5-90-6972, 1999 WL 34788335, at *6 (Minn. Dist. Nov. 22, 1991), *aff'd*, *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888 (Minn. App. 1992) and 500 N.W.2d 788 (Minn. 1993). Similar results have been obtained in other actions brought by the Minnesota Attorney General under the MCFA. Guglielmo Decl., Ex. A, AGO St. Jude Brief at 2 (citing cases). Minnesota courts also have approved numerous settlements of state enforcement actions involving nationwide injunctive relief or restitution based on the MCFA. *Id.* at 3 (citing cases).

As Judge Magnuson explained, agreeing with the Minnesota Attorney General's position, the MCFA "is intended to apply both to the conduct of foreign corporations that injures Minnesota residents **and to the conduct of Minnesota companies that injure[] non-residents.**" *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MD-1309 (PAM/JGL), 2004 WL 909741, at *6 (D. Minn. Apr. 28, 2004). Thus, courts in this District have allowed non-Minnesota residents to sue under the state's consumer protection statutes. *Maher v. Sempris, LLC*, No. 13-2202 ADM/JJK, 2014 WL 4749186, at *6 (D. Minn. Sept. 24, 2014) (denying motion to dismiss and allowing Georgia resident to bring a putative class action under Minnesota consumer protection statutes); *Laughlin v. Target Corp.*, No. 12-489 (JNE/JSM), 2012 WL 3065551, at *6 (D. Minn. July 27, 2012) (denying motion to dismiss claims under Minnesota consumer protection statutes brought by Illinois plaintiff on behalf of national class of footwear purchasers); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1009, 1017 (D. Minn. 2012) (denying motion to dismiss nationwide claims under Minnesota consumer

protection statutes brought by California and Florida residents). The Court should do the same here.

In support of their argument, Defendants rely primarily on *Ferrari* (MTD at 9-10), which makes the bold statement that "'[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury'" *Ferrari*, 2015 WL 2242128, at *9 (quoting *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2644 (ADM/SER), 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014)). As the analysis herein indicates, this statement is an oversimplification of choice of law jurisprudence. *See In re St. Jude Med., Inc*., 425 F.3d 1116, 1120-21 (8th Cir. 2005) (requiring a determination as to whether application of another state's law comports with choice of law rules and due process). And, *Insulate*, on which *Ferrari* relies for this proposition, has been distinguished as a case under the antitrust laws in which "'the constitutional and prudential requirements of standing take on particular significance.'" *In re Target Corp. Data Sec. Breach Litig*., 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014).[4]

---

[4] Defendants' cited other cases are not persuasive. MTD at 33-34. In *Olson v. Push, Inc*., No. 14-1163 ADM/JJK, 2014 WL 4097040, at *3 (D. Minn. Aug. 19, 2014) and *Arnold v. Cargill Inc*., No. 012086 (DWF/AJB), 2002 WL 1576141, at *3 (D. Minn. July 15, 2002), the statutes at issue expressly stated they did not apply extraterritorially. *Perras v. H & R Block*, 789 F.3d 914, 918 (8th Cir. 2015) also is distinguishable as the case was heavily focused on the nature of the out-of-state transactions. Although the *Syngenta* court disagreed that the Minnesota consumer protection statutes allow for extraterritorial application, it nonetheless concluded that the statutes could be applied "to conduct taking place in Minnesota." *In re Syngenta AG MIR 162 Corn Litig*., No. MDL 2591, 2015 WL 5607600, at *48-*49 (D. Kan. Sept. 11, 2015) (finding insufficient Minnesota contacts where no misrepresentations occurred in Minnesota).

Thus, Minnesota law can apply to conduct that emanates from Minnesota and impacts consumers nationwide. The next question is whether it comports with Due Process and choice of law rules to do so in this case. As discussed below, it does.

> ### 2. Application of the Minnesota Consumer Protection Statutes to Plaintiff's Claims Comports with Due Process and Does Not Violate Choice of Law Rules

Application of the Minnesota consumer protection statutes also must satisfy Due Process. *See St. Jude Med., Inc.*, 425 F.3d at 1120-21. "'For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Id*. at 1120 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). "The first step in the analysis is to determine whether there are substantive conflicts among the laws of class members' home states. Only if there are such conflicts is it necessary to determine the constitutionality of applying Minnesota law to those out-of-state Plaintiffs." *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486-87 (D. Minn. 2015). "'A conflict exists if the choice of one forum's law over the other will determine the outcome of the case.'" *Laughlin*, 2012 WL 3065551, at *6.

Defendants have failed to identify any substantive conflict with the laws of Plaintiff's home state, California, or any other state. *See* MTD at 35-36. Defendants simply assume there are conflicts in state consumer protection and unjust enrichment laws by relying on procedurally inapposite cases, decided at class certification. *See St. Jude Med., Inc.*, 425 F.3d 1116 (appeal of class certification decision); *Mazza v.*

*American Honda Motor Co.*, *Inc.*, 666 F.3d 581 (9th Cir. 2012) (same); *Tyler v. Alltel Corp.*, 265 F.R.D. 415 (E.D. Ark. 2010) (same); *Cruz v. Lawson Software, Inc.*, No. 08-5900 (MJD/JSM), 2010 WL 890038 (D. Minn. Jan. 5, 2010) (same).  Such a cursory summation without reference to the facts of this case is insufficient, in particular with regard to the law of Plaintiff's home state, California.  As in *Laughlin*, the Court should decline to engage in a choice of law analysis at this time.  *Laughlin*, 2012 WL 3065551, at *6 ("Because there is no assertion that there is any conflict between the laws of Illinois and Minnesota, or that the choice of Illinois law over Minnesota law will determine the outcome of the case, the Court declines to engage in a choice of law analysis at this time.").  Indeed, numerous courts have found that a formal choice of law analysis is premature at the pleading stage.  *See In re Nat'l. Hockey League Players' Concussion Injury Litig.*, MDL No. 14-2551 SRN, 2015 WL 1334027, at *16 (D. Minn. Mar. 25, 2015) (deferring choice of law analysis on a motion to dismiss because the proper inquiry required discovery and a fuller record); *Maher*, 2014 WL 4749186, at *5-6 (same); *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743, at *18 (D. Minn. July 15, 2013) (same); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946-47 (D. Minn. 2009) ("[C]lass certification is not before the Court.  It is, therefore, premature to consider choice of law issues or the claims of potential class members in other states").  Accordingly, the Court should defer any choice of law analysis until a sufficient factual record is developed, and the parties properly brief the issue at the class certification stage.

Even assuming there are conflicts, there are contacts with Minnesota sufficient to "creat[e] state interests, such that choice of its law is neither arbitrary nor fundamentally

13

unfair." *St. Jude Med., Inc.*, 425 F.3d at 1120.  In analyzing choice of law, Minnesota courts consider five choice-influencing factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Milkovich v. Saari*, 295 Minn. 155 (1973).  For the same reasons explained by Judge Montgomery in *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 535-37 (D. Minn. 2007), a case involving dissemination of uniform misrepresentations devised in and disseminated from Minnesota by a Minnesota-based corporation, each factor weighs in favor of applying Minnesota law.  Here, Plaintiff alleges that Defendants are headquartered in Minnesota, that Best Buy Co., Inc. is incorporated in Minnesota, and that Defendants' "policies and practices concerning the false marketing, advertising, and sale of merchandise at discounted, 'original,' and 'regular' prices were prepared and issued from Minnesota and the content of the deceptive language used in the marketing, advertising, and sales information was approved in Minnesota."  ¶¶15-16; *see also id.* at ¶12; Guglielmo Decl., ¶¶9-18 and Exs. E-N.  Such marketing was uniformly applied nationwide.  ¶45.  Contrary to Defendants' assessment (MTD at 37), Plaintiff and class members, as well as Defendants, easily would expect that Minnesota law would apply where the claims at issue concern Minnesota conduct aimed at consumers nationwide. *See Mooney*, 244 F.R.D. at 536 (finding "both non-Minnesota class members and Allianz could have predicted that Minnesota law would govern claims based on Allianz's allegedly fraudulent activities that emanated from Minnesota.").  Accordingly, application of Minnesota law comports with traditional notions of Due Process and

choice of law principles.  Indeed, under similar facts, Judge Magnuson applied Minnesota

law nationwide to consumer's claims in *Target*:

> In this case, the Court may presume there are substantive conflicts between the laws of Plaintiffs' home states and Minnesota law and still constitutionally apply Minnesota law. Minnesota's contacts with this action are legion: Target is headquartered in Minnesota; its computer servers are located in Minnesota; the decisions regarding what steps to take or not take to thwart malware were made in large part in Minnesota. "These contacts are sufficient to allow application of Minnesota law to the claims of non-Minnesota class members without offending either the Due Process Clause or the Full Faith and Credit Clause." *Id*. As Judge Montgomery aptly observed with respect to another large Minnesota-based company, Target "can not claim surprise by the application of Minnesota law to conduct emanating from Minnesota." *Id*.  And applying Minnesota law undoubtedly comports with putative Plaintiffs' expectations: when dealing with a Minnesota corporation such as Target, it is possible and in fact likely that Minnesota law will apply to those dealings. Minnesota law applies to Plaintiffs' claims.

*Target Corp. Customer Data Sec. Breach Litig*., 309 F.R.D. at 486-87; *see also Maher*,

2014 WL 4749186, at *5-6 (refusing to dismiss a Georgia plaintiff's attempt to apply

Minnesota law nationwide where the plaintiff alleged that the culpable conduct occurred

in Minnesota).[5]

---

[5]     *In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051 (N.D. Cal. 2015) and *In re Magnesium Oxide Antitrust Litig*., No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) (MTD at 11 n.4) both are distinguishable, where, unlike here, the court found there were insufficient contacts with the state whose law the plaintiffs sought to apply.

## II.    PLAINTIFF PLAUSIBLY STATES CLAIMS UNDER MINNESOTA CONSUMER PROTECTION STATUTES AND COMMON LAW

### A.    Plaintiff States Claims for Violation of the MCFA and MFSAA

Defendants argue that because Plaintiff's consumer protection claims do not utter the magic words "public benefit," they should be dismissed as a matter of law.  MTD at 12-13.  This argument lacks merit.  *See Blue Cross & Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, No. 11-2529 (DWF/JJG), 2012 WL 1343147, at *5 (D. Minn. Apr. 18, 2012)).    Where a defendant's deceptive practices are carried out through public advertisements, like here, courts easily find that a public benefit exists.  *See*, *e.g.*, *Khoday*, 858 F. Supp. 2d at 1017; *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003).   In particular, courts often have held that the public benefit requirement is satisfied in class actions or multiple-plaintiff actions where the general public is alleged to be deceived or where the plaintiff seeks broad-ranging injunctive, equitable, and declaratory relief.  *See Blue Cross*, 2012 WL 1343147, at *5 (finding public benefit in challenge to defendant's "deceptive and misleading marketing and informational materials" that were advertised to the general public); *Laughlin*, 2012 WL 3065551, at *5 (finding public benefit in false-advertising claim because "the misrepresentation was presented to the public at large"); *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1025, 1077-79 (D. Minn. 2010) (finding public benefit in allegations that defendant had mass-marketed a dangerous drug, where lawsuit could lead to changes in defendant's practices); *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee*, 687 F. Supp. 2d 884, 892 (D. Minn. 2009) (finding public benefit in estate's

16

consumer protection counterclaims where it alleged improprieties "throughout the country" by ADT).

The claims asserted here satisfy the public benefit requirement. Plaintiff alleges that Defendants used false and misleading statements to sell its products to the public at large, and he seeks relief that would benefit the public. *See*, *e.g.*, ¶¶3, 28, 112, 119, 124, Prayer for Relief. He alleges that the misleading statements were part of Defendants' routine strategy of advertising its products to the general public, including in its retail stores. *See*, *e.g.*, ¶¶1-4, 14, 27-28. Plaintiff is only one of many purchasers to be similarly misled. ¶¶2, 3, 9, 10, 28-36. And, he does not seek to exclusively – or even primarily – benefit himself, asking the Court to award class members damages, restitution, and/or injunctive relief, and to require Defendants to engage in a corrective advertising campaign. Prayer for Relief, ¶¶B-E. Defendants also argue that there can be no public benefit because Plaintiff and members of the proposed classes reside outside Minnesota. This is wrong. *See* Section I.C, *supra*. Accordingly, Plaintiff adequately pleads the public benefit requirement, and Defendants' argument to the contrary should be rejected.

**B.    Plaintiff States Claims for Violation of the MUTPA and MDTPA**

Defendants argue that Plaintiff is a "sophisticated consumer" and therefore unable to bring MUTPA or MDTPA claims. MTD at 14-16. Defendants fail to cite a single case to support its position and offer nothing other than their conjecture that Plaintiff should be treated as a sophisticated consumer, simply because he has been involved in past litigation. Contrary to Defendants' argument, "'[a]ny person injured' by a violation

17

of [Minnesota's consumer protection] statutes may bring a civil action as provided in the Private Attorney General Statute." *Kinetic Co.*, 672 F. Supp. 2d at 945. "The Minnesota Supreme Court reads 'any person' broadly," and excludes only sophisticated merchants – not consumers – from protection under the statutes. *Id.* at 945-46 & n.8. This Court rejected a similar argument in *Blue Cross*, where the defendant argued plaintiffs were sophisticated investors and thus, unable to bring a claim under the Private AG Statute. *Blue Cross*, 2012 WL 1343147, at *6. Again noting the Private AG Statute's "any person" language, this Court observed that in the *Group Health* case, the Minnesota Supreme Court had allowed three HMOs to recover under the MCFA and the Private AG Statute, stating that "[n]either the private remedies statute nor the substantive statutes contain any language restricting those who may sue to purchasers or consumers." *Id.* (quoting *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 8 (Minn. 2001)). This Court concluded that "Plaintiffs' potential status as sophisticated investors does not preclude them from bringing claims under the . . . Private AG Statute, especially when those claims provide benefits to the public at large . . . ." *Id.*

Defendants' lone authority for its theory is *Capital Midwest Fund, LP v. Johnson*, an unpublished, non-precedential, and factually distinguishable decision from the Minnesota Court of Appeals. *Capital Midwest Fund, LP v. Johnson*, No. A13-2023, 2014 WL 3396580 (Minn. App. July 14, 2014). The decision does not even address whether a plaintiff involved in prior litigation is a sophisticated consumer. *Capital Midwest* held that MUTPA does not apply to "sophisticated investors engaged in the purchase of securities," where the plaintiffs had certified to being accredited investors.

*Id.*, at *4.  Plaintiff, by contrast, and notwithstanding his participation in previous litigation, is a consumer who purchased a microwave oven, and has represented in good faith that he believed the sale price advertised and was thereby deceived.  Nothing in *Capital Midwest* alters the longstanding rule allowing "any person" to use the Private AG Statute.[6]

Defendants' second argument regarding Plaintiff's MDTPA claim is that he is not entitled to injunctive relief because he has failed to allege risk of future harm.  MTD at 15-16.  A MDTPA claim may survive a motion to dismiss where a plaintiff alleges defendants are still engaged in deceptive behavior, creating a "continuing wrong."  *Blue Cross*, 2012 WL 1343147, at *7.  Plaintiff's MDTPA claim is appropriate because Plaintiff has alleged an ongoing deceptive scheme by Best Buy that warrants injunctive relief and that Class members are being damaged and are likely to continue to be damaged by the ongoing deceptive practice.  ¶¶5, 10, 29, 41(g), 50, 55, 59, 64, 68, 72, 76, 80, 93-96, 102-04, 109, 110, 124.  Accepting Defendants' view would render injunctive relief under the consumer protection statutes nearly impossible to obtain.  While, on the one hand, victims of deceptive advertising must know the defendant's advertising is deceptive in order to bring and adequately plead a claim, as soon as they become aware of such unlawful conduct, they automatically lose standing to seek an injunction,

---

[6]    Defendants also argue Plaintiff is not entitled to attorneys' fees under MUTPA. Defendants are wrong.  The MUTPA is among the several statutes explicitly mentioned in the Private AG Statute. As long as the claim pleads a public benefit – and as explained elsewhere, here it does – Plaintiff may invoke the Private AG Statute.  *See*, *e.g.*, *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014).

according to Defendants. In effect, Defendants would be allowed to make an end-run around the enforcement provisions of the consumer protection statutes. That, of course, is at odds with the clear design of consumer protection statutes. *See*, *e.g*., *Spann*, 2015 WL 1526559, at *12; Guglielmo Decl., Ex. B, *Russell v. Kohl's Dep't Stores, Inc*., No. 5:15-cv-01143-RGK-SP, Order re Defendant's Motion to Dismiss ("*Russell* Motion to Dismiss Order"), at 7 (ECF No. 32). (C.D. Cal. Oct. 6, 2015). Like with the California claims discussed below, Defendants' effort to strike Plaintiff's prayer for injunctive relief should be rejected. *See* Section III.B.1, *infra*.

### C. Plaintiff States a Claim for Unjust Enrichment under Minnesota Law

A party may plead alternative causes of action and alternative theories of relief under both legal and equitable grounds. *See e.g.*, *Khoday*, 858 F. Supp. 2d at 1019 (denying motion to dismiss unjust enrichment claim at pleading stage where plaintiffs had satisfied claim's elements); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010) (same); *LePage v. Blue Cross & Blue Shield of Minnesota*, No. 08-584 (RHK/JSM), 2008 WL 2570815, at *8 (D. Minn. June 25, 2008) (same). Defendants argue Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has adequate legal remedies. MTD at 13-14. Yet, Defendants argue throughout their brief that Plaintiff does **not** have those same remedies. *Id*. at 9-13, 14-16. This is precisely why courts allow plaintiffs to plead in the alternative. Plaintiff alleges that Defendants were unjustly enriched by purchases that resulted from their phantom markdown misrepresentations and that equity demands return of those funds. ¶¶85-87. Thus, the unjust enrichment claim should go forward.

## III.    PLAINTIFF PLAUSIBLY STATES CLAIMS UNDER CALIFORNIA CONSUMER PROTECTION STATUTES AND COMMON LAW

### A.    Plaintiff Has Statutory Standing to Assert His UCL Claims

Defendants' argument that Plaintiff is a "professional consumer class action plaintiff," and therefore, does not have standing under the UCL is premised on nothing more than conjecture.  MTD at 16-17.[7]  Like Defendants' argument that Plaintiff is a sophisticated consumer and cannot bring claims under MUTPA and MDTPA, this argument should be rejected.  *See* Section II.B, *supra*.

Based solely on the fact that Plaintiff has been a plaintiff in other actions, the majority of which do not involve similar issues, Defendants make the unreasonable inference that Plaintiff somehow should be wise to all future-encountered false and misleading pricing practices.  MTD at 14-17.  Defendants do not cite a single case for their position.   There is no evidence that Plaintiff has acquired some specialized

---

[7]    To the extent Defendants instead are arguing Plaintiff should no longer be treated as a consumer on account of his litigation history, this argument, too, can be readily dismissed.  As *Garcia v. Sony Computer Entn't Am., LLC* explained, "'[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information,' is actionable under the UCL." *Garcia v. Sony Computer Entn't. Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012).  But whether that statement is deceptive depends on its effect on the reasonable consumer, defined as "'the ordinary consumer acting reasonably under the circumstances, [who] is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture."'  *Id.*  In this case, no serious interpretation of the FAC leads to any conclusion but that Plaintiff is a consumer who purchased his microwave for personal use.  ¶¶27-34.  Moreover, in cases in which plaintiffs have been held to higher standards as non-consumers, one of two circumstances was present: either they held some independent expert knowledge in the area, *People v. Wahl*, 39 Cal. App. 2d Supp. 771, 773 (1940), or they themselves were business insiders fully aware of customary trade practices, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509-512 (2003). Neither of these circumstances is present here.

21

knowledge in other unrelated contexts that would have caused him to become aware of Defendants' deceptive practices in this case. Moreover, the detailed aspects of how or why Plaintiff perceived the deceptive advertising the way he did, as well as all other possible motivations for his actions, are questions of fact not appropriately considered on a motion to dismiss. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

None of Defendants' cited cases change this analysis. MTD at 17. For instance, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) and *C.H. Robinson Worldwide, Inc. v. Ghirardelli Chocolate Co.*, No. 03-2978 (JRT/FL), 2004 WL 1630873 (D. Minn. July 19, 2004) are factually distinguishable, as neither case deals with a sophisticated retail consumer. As even Defendants admit (MTD at 17), *Sybersound* deals with "sophisticated contracting parties" and *C.H. Robinson* with "sophisticated business entit[ies]." *Sybersound*, 517 F.3d at 1153; *C.H. Robinson Worldwide, Inc.*, 2004 WL 1630873, at *3. Thus, these cases are inapposite.

Indeed, case law makes clear that Plaintiff is not precluded from asserting his UCL claim based on his past litigation history. The Ninth and Seventh Circuits have held that a plaintiff's litigation history, or a plaintiff's repeated attempts to vindicate his statutory rights, standing alone, should not "undermine [his] ability to seek redress for injuries suffered . . . ." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (citing *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006)). Numerous courts have found plaintiffs pursuing claims under the UCL to be adequate class representatives despite attempts by defendants to label them as a "professional plaintiff." *See, e.g.,*

*Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS-A-S, 2015 WL 7776794, at *10 (C.D. Cal. Dec. 1, 2015); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2013). Some courts, in fact, even have suggested that prior familiarity with similar litigation is a valued and significant benefit. *See, e.g., Murray*, 434 F.3d at 954 ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions."). Therefore, Plaintiff's prior litigation history does not negate his statutory standing under the UCL.

### B. Plaintiff Has Standing to Assert Claims for Injunctive Relief and for Restitution under the UCL, CLRA, and FAL

Defendants offer only two reasons for concluding that Plaintiff lacks standing to bring claims for injunctive relief and for restitution under the UCL, CLRA, and FAL: first, now that its deceptive discount pricing scheme has been exposed, Plaintiff "cannot plausibly claim" to be harmed by Best Buy again in the future (MTD at 18-19), and second, since restitution always is limited to the difference between the amount paid and value received ("cost-minus-value" measure), Plaintiff cannot seek restitution. *Id*. at 19. Preliminarily, Defendants' argument is premature at this pleading stage. *See, e.g.*, *Spann*, 2015 WL 1526559, at *11 (deciding availability of injunctive relief on summary judgment); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (same). With respect to injunctive relief, numerous cases hold that a consumer can in fact have standing to seek injunctive relief despite knowing of the wrongful conduct. *See, e.g.*, *Spann*, 2015 WL 1526559, at *9-12. With respect to restitution, no California court has limited restitution in the manner Defendants advocate, and in fact, two courts

specifically have rejected their argument.  *See id.*, at *4-5; Guglielmo Decl., Ex. B, *Russell* Order re Motion to Dismiss at 3-6.

### 1.    Injunctive Relief

It is well settled that "an injunction is 'the primary form of relief available . . . to protect consumers from unfair business practices.'"  *Spann*, 2015 WL 1526559, at *9. The court in *Spann* rejected the identical argument Defendants now assert, and held the plaintiff had standing to seek injunctive relief despite that she "undisputedly knew" of the defendant retailer's deceptive pricing scheme.  *See Spann*, 2015 WL 1526559, at *10, 12. *Russell* followed on the heels of *Spann* and it too disposed of the argument Best Buy repeats here.  Guglielmo Decl., Ex. B, *Russell* Order re Motion to Dismiss at 6-7; *see also id.*, Ex. C, *Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-CV 01143-RGK-SP, Order re Plaintiffs' Motion for Class Certification, at 8 (C.D. Cal. Dec. 4, 2015) (ECF No. 52). *Spann* and *Russell* relied heavily on the comprehensive analysis and discussion of *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011), and a related line of decisions.  This Court should adopt the reasoning of *Henderson* and its progeny and hold that Plaintiff has standing to pursue injunctive relief.[8]

---

[8]    Defendants' cited cases are distinguishable.  MTD at 18-19.  *Oxina v. Lands' End, Inc.*, No. 14 CV 2577-MMA (NLS), 2015 WL 4272058 (S.D. Cal. June 19, 2015), *Mason v. Nature's Innovation, Inc.*, No. 12 CV 3019 BTM (DHB), 2013 WL 1969957 (S.D. Cal. May 13, 2013), and *Arroyo v. TP-Link USA Corp.*, No. 5:14 CV 04999 EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) all involve products that do not work as advertised. By contrast, this case does not involve representations about the product's performance. *See*, *e.g.*, *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 192 (D.D.C. 2013).

### 2.    Restitution

Case law holds that "a court awarding restitution under the California consumer protection laws has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013).  Contrary to Defendant's argument, restitution is not ***always*** limited to the difference between the amount paid and value received.  MTD at 19.  In fact, *Russell* recently rejected the same argument Defendants now raise.

In *Russell*, the district court rejected the argument that plaintiffs are not entitled to alternative measures of restitution as a matter of law.  Guglielmo Decl., Ex. B, *Russell* Motion to Dismiss Order at 3-6.  The court held:  "Plaintiffs need not allege a cost-minus-value measure of restitution to survive a Motion to Dismiss because alternative measures of restitution are available."  *Id.* at 6.  Based on precedent, the court offered four potential alternative measures, all of which might potentially apply here:  "'what a purchaser would have paid at the time of purchase had the purchaser received all the information'"; "'rescission and refund'"; "'transaction value'"; or "'restitutionary disgorgement.'"  *Id.* at 3-6.  *See also Spann*, 2015 WL 1526559, at *4 (holding that California case law makes clear cost-minus-value is not "the only way" restitution can be calculated); *Johns v. Bayer Corp.*, No. 09 CV 1935 AJB (DHB), 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (same).  This Court should adopt the well-reasoned analysis and conclusions set forth in *Russell*.

Defendants appear to argue that *In re Tobacco Cases II* stands for the proposition that cost-minus-value is the only measure used to calculate restitution. MTD at 19. This is simply wrong, or at best, misleadingly incomplete. In *In re Tobacco Cases II*, the California appellate court squarely addressed the issue of alternative measures of restitution, ultimately concluding that plaintiffs may assert any number of measures of restitution but may not necessarily prevail on such measures in the absence of proof. *See In re Tobacco Cases II*, 240 Cal. App. 4th, 779, 792 (2015). Footnote 8 offers even further proof; there, the court stated in plain terms that, "plaintiffs were free to argue for any measure of restitution they deemed proper." *Id.* at 794, n.8. But perhaps the best and most conclusive proof that *Tobacco Cases II* decidedly rejected the same argument now raised, is when the court stated in no uncertain terms: "We agree that *Vioxx* [180 Cal. App. 4th 116 (2009)] does not purport to set forth the exclusive measure of restitution ***potentially*** available in a UCL case. It remains, however, that plaintiffs had the burden of proving entitlement to an alternative measure of restitution proper under all the circumstances." *Id.* at 792 (emphasis in original).

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which was decided at the class certification stage, falls in line with *In re Tobacco Cases II*. In *Pulaski*, the Ninth Circuit reversed a district court's ruling denying certification of restitution claims under the UCL and FAL. *Id.*, at 984. The district court had incorrectly determined that "common questions did not predominate on the issues of entitlement to restitution and amount of restitution due each class member." *Id.* Significantly, the district court's decision rested on "concern" – very similar to that expressed by Best Buy

here – over how to deal with class members who had "derived direct economic benefits" from the unlawful practices being challenged.  *Id.*  By contrast, the Ninth Circuit had no trouble dismissing concerns over benefits received *after purchase*, explaining its reasoning quite matter-of-factly: "restitution is based on what a purchaser would have paid *at the time of purchase* had the purchaser received all the information."  *Id.* at 989. Any reasonable interpretation of the Ninth Circuit's instruction on restitution measures cannot be reconciled with Defendants' overly narrow position on the subject.

Plaintiff in this case alleges that he would not have purchased the microwave had he "received all the information," or at least would not have paid as much as he did.  ¶¶9, 32-34.  By any fair reading of *Russell*, *In re Tobacco Cases II*, and *Pulaski*, Plaintiff has pleaded all that is required of him to seek restitution.

### C.    Plaintiff States a Claim for Unjust Enrichment under California Law

Contrary to Defendants' contention (MTD at 19-20), a plaintiff may assert a freestanding claim for unjust enrichment under California law.  In support of their argument, Defendants cite *Jogani v. Superior Court*, 165 Cal. App. 4th 901 (2008) and *Everett v. Mountains Recreation & Conservancy Auth.*, 239 Cal. App. 4th 541 (2015), which are two cases in a line of decisions tracing back to a single California appellate court decision, *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).  A closer analysis of *Melchior* suggests the case was wrongly decided.  *See* Douglas L. Johnson, Neville L. Johnson, *What Happened to Unjust Enrichment in California?  The Deterioration of Equity in the California Courts*, 44 LOY. L.A. L. REV. 277, 295 (2010). Preliminarily, *Melchior*'s now oft-repeated and misguided analysis of unjust enrichment

claims is purely *dicta*; *Melchior* held simply that the Copyright Act preempted plaintiff's unjust enrichment claim. *Melchior*, 106 Cal. App. 4th at 793. Moreover, even at the time *Melchior* was decided, it was directly at odds with earlier precedent from the California Supreme Court, *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54 (1996), a case in which the California Supreme Court upheld a plaintiff's claim for unjust enrichment. *Id.* Relying on *Ghirardo*, some courts have since upheld freestanding claims for unjust enrichment. *See, e.g., Hirsch v. Bank of Am.*, *N.A.*, 107 Cal. App. 4th 708, 721-22 (2003); *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009). Although there is admittedly what appears to be a split of authority in California on this issue, this Court should follow *Ghirardo*, *Hirsch*, and *Hernandez*, and uphold Plaintiff's unjust enrichment claim under California law.

Defendants disagree, arguing that they have not been unjustly enriched because the value of the purchased microwave is not less than what was actually paid by Plaintiff. MTD at 20.[9] As discussed above, however, cost-minus-value is not the only measure of restitution. *See* Section III.B.2, *supra*. In any event, as Defendants concede (MTD at 20), and the Ninth Circuit confirms, even where courts find that unjust enrichment is not a standalone cause of action, they still consider the substance of the facts alleged and often interpret the cause of action as "a valid quasi-contract claim seeking the remedy of restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see*

---

[9]    Defendants greatly overpromise with its two cited cases, *Lucky Auto Supply v. Turner*, 244 Cal. App. 2d 872 (1966) and *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333 (2008). MTD at 20. Neither case goes as far as claimed.

*also Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014);

*Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989).  As these cases

suggest, substance must be favored over form.  The same should apply here, where it is

clear based on any reasonable interpretation of the alleged facts that Plaintiff adequately

states a claim to restitution based on a theory of unjust enrichment.  ¶¶81-87.

### D.    Plaintiff's Pre-Suit CLRA Notice Is Adequate

Defendants argue that Plaintiff's CLRA damages claims should be stricken

because Plaintiff failed to satisfy the CLRA's pre-suit notice requirement.  Specifically,

Defendants claim that Plaintiff's notice was defective as it purportedly: (i) failed to

sufficiently describe the products at issue; (ii) cannot include products Plaintiff did not

purchase; and (iii) failed to give direct notice to Best Buy Stores, L.P., a subsidiary of

Best Buy Co., Inc.  MTD at 22-24.[10]  Defendants' arguments fail as they ignore the facts,

specific statutory language, and controlling case law.

On October 28, 2015, Plaintiff sent to Best Buy Co., Inc. (the parent corporation

of Best Buy Stores, L.P., both of which are headquartered at the same address) notice

pursuant to the CLRA, stating that Best Buy represents in its pricing, marketing, and

advertising of its products that the products are sold at a discount from their original or

regular price, when in fact they are not, in violation of the CLRA.  Guglielmo Decl., Ex.

---

[10]    Defendants do not, and cannot, challenge Plaintiff's ability to request equitable relief from either Defendant under the CLRA.  Injunctive and restitutionary relief are available without giving pre-suit notice.  *See* Cal. Civ. Code §1782(d); *see also Kennedy v. Natural Balance Pet Foods, Inc.*, No. 07-CV-1082 H (RBB), 2007 WL 2300746 at *2-3 (S.D. Cal. Aug. 7, 2007).

D, CLRA Letter at 1-2.  Plaintiff further stated that he intended to seek actual damages, punitive damages, and any other damages permitted under the CLRA if Best Buy did not provide a full and adequate response to the letter showing compliance with California Civil Code §1782(c) within 30 days.  Nothing more is required.  *See* Cal. Civ. Code 1781(a)(1)-(2).  Thus, Plaintiff's letter clearly satisfied the notice requirements of the CLRA.  *See Miller*, 912 F. Supp. 2d at 869  (where composition of the product is less important, cases turn on whether the alleged misrepresentations are sufficiently similar across product lines).

Even if the CLRA Letter were inadequate, Plaintiff's initial complaint provided more than ample details.  On October 29, 2015, Plaintiff served Defendant Best Buy Co., Inc. with a copy of his initial Class Action Complaint ("Complaint").  ECF No. 1.  The Complaint specifically stated that Plaintiff had purchased a GE microwave for $179 and that it was falsely advertised at $20 off the regular price of $199.00 and that the microwave had been offered for sale at the sale price in excess of 90 days.  Complaint, ¶¶26-27.  The Complaint further described the deceptive discount pricing scheme and how it violated the CLRA.  Complaint, ¶¶3-10, 15-20, 26-28.  Notably, the Tenth Cause of Action was brought for violation of the CLRA, seeking only injunctive relief. Complaint, ¶¶121-25.  Thus, the Complaint provided ***additional*** notice compliant with the CLRA.

Ultimately, Plaintiff received no response to his CLRA Letter and he amended his Complaint to add the damages claim, which is proper.  *See* Cal. Civ. Code §1782(d); *Corra v. Energizer Holdings, Inc.,* 962 F. Supp. 2d 1207, 1220 (E.D. Cal. 2013) (denying

30

motion to dismiss finding plaintiff complied with CLRA notice provisions by including damages claim in amended complaint); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (same); *see also Morgan v. AT & T Wireless Serv., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009) (denying motion to dismiss based on purportedly deficient CLRA notice noting that the purpose of the notice "exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time.").

Defendants fail to cite any case that is directly on point to support their claim that Plaintiff's failure to provide a CLRA notice **separately** to Best Buy Stores, L.P. precludes a damages claim under the CLRA.  MTD at 22.  Where Best Buy Stores, L.P. is an indirect subsidiary of Best Buy Co., Inc. (*see* Guglielmo Decl., ¶10, Ex. F) and Defendants maintain the same principal corporate headquarters in Richfield, Minnesota (¶¶15-16), it is reasonable to conclude that Best Buy Stores, L.P. received sufficient CLRA notice.  Although not a basis for this motion to dismiss, Best Buy contends that Best Buy Co., Inc. is an improper defendant, and during a meet and confer discussion, Defendants' counsel advised Plaintiff's counsel that Best Buy Stores, L.P. actually was the proper party.  Guglielmo Decl., ¶3.  Based on Plaintiff's counsel's due diligence, Plaintiff disputes this and contends that Best Buy Co., Inc. maintains decisional control over at least some aspects of the operations of Best Buy Stores, L.P.  *Id.*, ¶¶4, 9-18 and Exs. E-N.  Defendants make no argument (and given Defendants' counsel's representations during the meet and confer as to the appropriate defendant in this case,

cannot make any argument) that Best Buy Stores, L.P., as a subsidiary of Best Buy Co., Inc., was not aware of the original claims against the parent company. Thus, Defendants' argument that CLRA notice was insufficient as to Best Buy Stores, L.P. should be rejected.[11]

Defendants further complain that Plaintiff failed to sufficiently identify the products at issue. But this is the wrong inquiry. It is Defendants' ***nationwide*** deceptive pricing scheme that violates the CLRA, not the products, and thus, such product specificity is not required. *See Corra,* 962 F. Supp. 2d at 1220; *Brown v. Hain Celestial Grp., Inc.,* 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012). This distinguishes Defendants' cited cases, *Ruszecki v. Nelson Bach USA Ltd.*, No. 12-cv-495-L (NLS), 2015 WL 6750980, at *6 (S.D. Cal. June 25, 2015), *Allen*, 2013 WL 5436648, at *3 (S.D. Cal. September 27, 2013), and *Seifi*, 2013 WL 5568449, at *9 (N.D. Cal. October 9, 2013). MTD at 23. Defendants also argue that it is impermissible for Plaintiff to provide CLRA

---

[11]     To the extent that the Court finds that notice was deficient in any way, the Court should follow the majority of courts in the Ninth Circuit and allow Plaintiff an opportunity to replead. *See Wehlage v. EmpRes Healthcare Inc.*, No. C10-5839 CW, 2012 WL 380364, at *8 (N.D. Cal. Feb. 6, 2012) (denying motion to dismiss CLRA damages claim and granting leave to replead). Defendants' principal authority for the proposition that a dismissal should be with prejudice, *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), has been roundly rejected after the California Court of Appeal criticized it and similar federal decisions for failing to take into account the purpose of the CLRA notice provision, holding that dismissal of CLRA claims on notice grounds must be without prejudice. *Morgan*,177 Cal. App. 4th at 1261. Even the majority of Defendants' cited cases where a dismissal was granted did so with leave to amend. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1017 (N.D. Cal. 2014); *Allen v. Similasan Corp.*, No. 12 CV 0370, BTM-WMC, 2013 WL 5436648, at *3 (S.D. Cal. Sept. 27, 2013); *Herron v. Best Buy Stores, L.P.*, No. 12-cv-02103 GEB-JFM, 2014 WL 2462969, at *3 (E.D. Cal. May 29, 2014); *Seifi v. Mercedes-Benz USA, LLC*, No. C12-5493-JEH, 2013 WL 5568449, at *9 (N.D. Cal. Oct. 9, 2013).

notice for any appliance he did not purchase.  This simply rehashes Defendants' same argument that Plaintiff lacks standing to represent those who purchase different products, and fails for the same reasons discussed above.  *See* Section I.B, *supra*.  Indeed, courts routinely permit plaintiffs to sue under the CLRA on behalf of purchasers of products that the plaintiffs did not personally purchase themselves.  *Herron v. Best Buy Stores, L.P.*, No. 12 CV 02103 GEB–JFM, 2014 WL 465906, at *6 (E.D. Cal. Feb. 4, 2014); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

## IV.    PLAINTIFF'S CLAIMS ARE PLED WITH SUFFICIENT PARTICULARITY

The FAC provides a detailed account of Defendants' pricing scheme and how it induced a purchase by Plaintiff as required by Rule 9(b).  Yet, Defendants argue that Plaintiff's consumer protection and unjust enrichment claims are insufficiently particular. MTD at 24-27.  This argument fails as well.

Rule 9(b) requires that "the complaint [] identify the 'who, what, where, when, and how' of the alleged fraud."  *US v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  The particularity requirements, however, must be read "in harmony with the principles of notice pleading."  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).  The complaint need not "be suffused with every minute detail of a misrepresentation."  *Carlson v. A.L.S. Enter., Inc.*, No. 07-3970 (RHIC/JSM), 2008 WL 185710, at *3 (D. Minn. Jan.18, 2008).  If a complaint includes enough detail to inform the defendant of the factual core of the claims against it, it passes muster under Rule 9(b). *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

The degree of particularity required depends on the parties' relationship and the nature of the case. *Kinetic*, 672 F. Supp. 2d at 945 (citing *BJC Health Sys.*, 478 F.3d at 917).

Here, Plaintiff has alleged the relevant facts regarding the product he purchased, the specific representation that was misleading, and how he was misled by Defendants' pricing scheme. ¶¶15, 27-28. Thus, Plaintiff satisfies Rule 9(b) as he alleges the "who," "what," "where," "when," and "how" of Defendants' actions.

Specifically, Plaintiff identifies the "who" as it describes how Defendants systematically and routinely represent merchandise as on sale when in reality the purported discounts are false, causing Plaintiff and other consumers to make purchases they would not have otherwise made. ¶¶1-5, 9, 14-16, 25-34. Plaintiff identifies the "what," "where" and "when" by identifying the merchandise that he purchased in San Diego in 2015 that was subject to Defendants' pricing scheme, and further describes that Defendants have routinely advertised and sold merchandise with false discounts. ¶¶12-16, 27-34. Plaintiff further alleges the "how" by describing Defendants' scheme and by providing examples that Plaintiff, the FTC, and an independent consumer organization have found to be misleading. *Id.* ¶¶1-9, 14-15, 17-19, 22-34.

Of the three cases Defendants cite in support of their argument, two are distinguishable and one fully supports Plaintiff's position, not Best Buy's. MTD at 26-27. In *Hoyt v. Marriott Vacations Worldwide Corp.*, No. 12-3093 (DSD/JJK), 2014 WL 509903 (D. Minn. Feb. 7, 2014) plaintiffs failed to plead with particularity because they failed to identify "who made the allegedly fraudulent statements" and their "group pleading" failed to differentiate between the six defendants regarding the statements. *Id.*,

34

at *6.  The same flaw was present in *Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1112 (D. Minn. 2009) ("Because the Complaint does not identify which Defendant was responsible for the particular misrepresentations, Plaintiffs' fraud claims are not particular as to the 'who' requirement of pleading fraud.").  Here, there is ***no*** group pleading – the "who" is clearly, and only, Best Buy, and Defendants have all the information they need to defend themselves.

In *Select Comfort Corp. v. The Sleep Better Store, LLC*, 796 F. Supp. 2d 981 (D. Minn. 2011), meanwhile, the court found that the plaintiff ***met*** the Rule 9(b) standard because the complaint was based on facts uniquely within the defendant's possession, it identified an ongoing practice of fraud, and it provided representative examples of the fraud.  *Id*. at 985.  The same is true here; Plaintiff has identified an ongoing deceptive discount pricing scheme in Defendants' stores and provided representative examples via the Consumers' Checkbook/Center for the Study of Services report and his own microwave-oven purchase.  ¶¶22-28.  The facts surrounding this alleged scheme are uniquely within Defendants' possession.

In sum, the FAC provides Defendants with more than sufficient notice to respond specifically to the allegations, thus meeting Rule 9(b)'s pleading requirements.

## V.    DEFENDANTS' MOTION TO STRIKE IS PREMATURE AND SHOULD BE DENIED

### A.    Plaintiff's Class Allegations Should Not Be Stricken

Defendants' attempt to strike the class allegations, arguing that the class definitions contain putative class members who do not have Article III standing, should

be rejected as premature.  MTD at 27-32.  Striking class allegations "is an 'extreme measure' that is infrequently granted."  *Soular v. N. Tier Energy LLC,* Civ. No. 15 CV 556 (SRN/LIB), 2015 WL 5024786, at *9 (D. Minn. Aug. 25, 2015) (citing *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)).  This is because "[t]he propriety of class action status can seldom be determined on the basis of the pleadings alone."  *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977).  Defendants raise fact-intensive questions regarding whether each class member can meet the injury-in-fact standing requirement.  As in Defendants' own primary authorities, *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) and *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013), this inquiry must be reserved until the class certification stage, and not made in connection with a pre-discovery motion to strike.  Defendants attack Plaintiff's allegations through introduction of the full results of the CSS study, which only identifies eight of the myriad products Defendants sell.  Although Defendants claim this study reveals that Defendants' pricing is appropriate, the study actually shows that at least two products were deceptively priced as "on sale" because they always were offered at the "on sale" price, and never at the "original" or "regular" price. ¶25.  Accordingly, the study reveals that the product Plaintiff bought was not the only deceptively priced product.  Discovery of Defendants' pricing records, rather than a study concerning only eight of Defendants' products, will determine the proper scope of the classes Plaintiff seeks to certify.  None of Defendants' cited cases support Defendants' argument that a court may strike class allegations prior to discovery where such fact questions exist.

In any event, Defendants' arguments can be rejected as the class definitions are not overbroad or can be refined at the class certification stage. The classes, as defined, include only purchasers of appliances (Nationwide Class) or items (California Class) sold by Defendants. ¶¶35-36. Unlike in Defendants' cited case *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (MTD at 29), Plaintiff alleges a nationwide deceptive pricing scheme that affected all consumers equally. Purchasers necessarily look at, and seek out, price tags and/or other pricing information before purchasing products. In other words, anyone who purchased merchandise at a purported false discount was impacted similarly. As a result, Plaintiff's classes only include those who were harmed by Defendants' conduct. Importantly, the consumer protection statutes of California and Minnesota do not require proof of individual reliance, but rather, only proof of awareness of a defendant's misrepresentations. *See Spann*, 307 F.R.D. at 521-29 (certifying a class that included all purchasers of falsely discounted clothing and stating that proof of individual reliance was not required under the UCL, CLRA or FAL); *Khoday*, 2014 WL 1281600, at *30 (collecting cases and stating that "similar to California, Minnesota courts have found that class members' awareness of misrepresentations provides a sufficient causal nexus between a violation of the consumer protection statutes and damage[]"); *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 808 (Minn. 2004) (refusing to dismiss consumer fraud class action on motion to dismiss where "the complaint allege[d] that misrepresentations were made and consumers were damaged thereby").

Additionally, to the extent that "on sale" appliances and items were not affected by Defendants' fraudulent pricing scheme, the class definitions, through the discovery and class certification processes, can be refined to exclude those appliances and items. In fact, numerous courts recognize that over-breadth alone is not proper grounds for striking class definitions. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, No. 4:15 CV 517 RLW, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015) ("'An overbroad class can be shrunk to eliminate the overbreadth; over-breadth is thus not a per se ground for dismissal.'"); *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604, at *24 (D. Neb. Nov. 7, 2008) (refusing to strike class based on over-breadth); *cf. Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (stating that challenges to over-inclusiveness "can and often should be solved by refining the class definition rather than by flatly denying class certification. . ."). As a result, any deficiencies associated with the scope of Plaintiff's class definitions can be addressed through discovery and resolved at the class certification stage.

### B.    Nationwide Application of Minnesota's Consumer Protection Statutes Is Appropriate

As discussed above in connection with Plaintiff's ability to sue under Minnesota law, application of Minnesota law is proper based on the facts of this case. *See* Section I.C, *supra*. Where a defendant's conduct originates in, and emanates from Minnesota,

nationwide application of Minnesota law is proper, even where the effects of the defendant's conduct are felt elsewhere.  *See Target*, 309 F.R.D. at 486-87 (applying Minnesota law nationwide because the defendant was headquartered and incorporated in Minnesota and the offending conduct emanated from Minnesota); *Maher*, 2014 WL 4749186, at *5-6 (refusing to dismiss a Georgia plaintiff's attempt to apply Minnesota law nationwide where the plaintiff alleged that the culpable conduct occurred in Minnesota); *Mooney*, 244 F.R.D. at 535-37 (applying Minnesota law nationwide because the defendant was headquartered and incorporated in Minnesota and the offending conduct emanated from Minnesota).

## C.    Defendant Has Failed to Demonstrate that Plaintiff's Claims Cannot Satisfy Rule 23(b)(3) Predominance

Striking class allegation is proper only when the pleadings conclusively demonstrate that the requirements of Rule 23 cannot be met.  *Giesmann v. American Homepatient, Inc.*, No. 4:14 CV 1538 RLW, 2015 WL 3548803, at *5 (E.D. Mo. June 8, 2015).  Here, Defendants cannot demonstrate that class certification is impossible, or even implausible.  As previously discussed, any Class member who purchased a product subject to Defendants' deceptive discount pricing scheme, necessarily viewed and was injured by a false pricing representation.  As such, the legality of Defendants' scheme, its ultimate scope, and the proper relief for compensating those harmed, all are common issues that predominate over any individual ones.

*Spann v. J.C. Penney Corp.* supports this conclusion.  In *Spann*, the plaintiff sought to certify a class under the UCL, FAL, and CLRA for the defendant's allegedly

deceptive pricing scheme. The court certified the class and noted that predominance was satisfied because the plaintiff sought to prove her claims by introducing the defendant's pricing policies and data. *Spann*, 307 F.R.D. at 519-31. Moreover, materiality and reliance concerns were not present because the defendant's pricing scheme and the defendant's false pricing representations were disseminated to the class as a whole. *Id.*

Here, similar to *Spann*, Plaintiff can prove his claims on a class wide basis because Defendants track their sales and retain pricing data. ¶4. Additionally, unlike in Defendants' cited cases (MTD at 39), where some class members never saw the misrepresentations at issue (as in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *Davis-Miller v. Auto. Club of S. California*, 201 Cal. App. 4th 106, 124 (2011), and *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (Cal. Ct. App. 2009)) or were exposed to differing representations (as in *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014)), materiality and reliance concerns are not present because all class members were subject to Defendants' uniform deceptive pricing representations. ¶45. As previously stated, by the mere fact of their purchase, Plaintiff and the class members must have viewed and been subjected to Defendants' deceptive pricing representations. Accordingly, Plaintiff can use Defendants' sales data and its pricing policies to establish the scope of Defendants' conduct, its legality, and the injury it has caused to the class as a whole, and is not required to prove individual reliance because all class members were subject to Defendants' fraudulent pricing representations.

In sum, Defendants' motion to strike Plaintiff's class allegations should be denied.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and their motion to strike.

Dated: February 2, 2016

*s/* Joseph P. Guglielmo
Joseph P. Guglielmo (NY 275989)
Erin Green Comite (CT 420630)
Joseph Pettigrew (CA 236933)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
jpettigrew@scott-scott.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P
Karen Hanson Riebel (MN #219770)
Eric N. Linsk (MN #388827)
Kate M. Baxter-Kauf (MN #392037)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile:  612-339-0981
khriebel@locklaw.com
rnlinsk@locklaw.com
kmbaxter-kauf@locklaw.com

CARPENTER LAW GROUP
Todd D. Carpenter
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

CARLSON LYNCH SWEET & KILPELA, LLP
Gary F. Lynch
Edwin J. Kilpela, Jr.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-253-6307
Facsimile:  412-231-0246
glynch@carlsonlynch.com
ekilpela@carlsonlynch.com

WOOD LAW FIRM, LLC
E. Kirk Wood
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile: 866-747-3905
ekirkwood1@bellsouth.net

*Attorneys for Plaintiff Randy Nunez, on behalf of himself and all others similarly situated*