UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Randy Nunez, on behalf of himself and all others similarly situated,

        Plaintiff,

v.

Best Buy Co., Inc. and
Best Buy Stores, L.P.,

        Defendants.

Civil No. 15-3965 (DWF/SER)

**MEMORANDUM
OPINION AND ORDER**

_____

Edward Kirksey Wood, Jr., Esq., Wood Law Firm LLC; Edwin J. Kilpela, Jr., Esq., and Gary F. Lynch, Esq., Carlson Lynch Sweet & Kilpela, LLP; Eric N. Linsk, Esq., Karen Hanson Riebel, Esq., and Kate M. Baxter-Kauf, Esq., Lockridge Grindal Nauen PLLP; and Erin Green Comite, Esq., and Joseph P. Guglielmo, Esq., Scott + Scott, LLP; counsel for Plaintiff.

Anne M. Lockner, Esq., Michael A. Geibelson, Esq., and Seth A. Nielsen, Esq., Robins Kaplan LLP, counsel for Defendants.

_____

**INTRODUCTION**

Plaintiff Randy Nunez filed this putative class action against Defendants Best Buy Co., Inc. and Best Buy Stores, L.P. (collectively, "Best Buy") after Nunez purchased a microwave from a Best Buy store in San Diego, California. Nunez alleges that he purchased the microwave based on his belief that Best Buy had discounted its price. But, Nunez claims, Best Buy was in fact engaging in deceptive advertising by misrepresenting the "regular" price of the microwave. He alleges that this misrepresentation was part of a broad scheme of fraudulent price advertising that Best Buy implemented from its

corporate offices in Richfield, Minnesota, in violation of various Minnesota and California laws.

The Court now considers Best Buy's Motion to Dismiss the First Amended Complaint or Alternatively, to Strike Portions of the First Amended Complaint. Because the Court concludes that the First Amended Complaint fails to plead fraud with particularity, the Court grants Best Buy's motion and dismisses the First Amended Complaint without prejudice.

## BACKGROUND

In June 2015, Nunez, a resident of San Diego, California, began searching for a microwave. (Doc. No. 22 ("First Am. Compl.") ¶¶ 14, 27.) Subsequently, at an unspecified date, he purchased a General Electric over-the-range microwave from a Best Buy retail location in San Diego. (*Id.* ¶¶ 14, 27-28.) Nunez paid $179.99 (not including sales tax), a price that Best Buy represented as $20 less than the "regular" price of $199.99. (*Id.*) Nunez asserts that Best Buy's "marketing" stated, "SALE LIMITED TIME ONLY," and that Nunez would not have purchased the microwave if Best Buy had not advertised $179.99 as a discounted price. (*Id.* ¶ 28.)

Nunez claims that Best Buy's representation of the microwave's discounted price was false. He asserts, "[u]pon information and belief," that Best Buy did not sell the microwave for $199.99 during the three months leading up to his purchase of the microwave. (*Id.*) Thus, according to Nunez, Best Buy falsely represented $199.99 as the "regular" price and falsely represented $179.99 as a discounted price based on that "regular" price. (*See id.*)

Nunez also alleges that Best Buy's deceptive pricing of the microwave is part of a widespread scheme of "continually misleading consumers by advertising merchandise at purportedly discounted, 'original,' and 'regular' prices." (*Id.* ¶ 2.) According to Nunez, Best Buy conveyed misleading discount prices through in-store displays and print advertisements, typically by listing a discounted price above a higher "regular" price and using a phrase such as "on sale," "sale," "sale limited time only," "save," or "you save" in capital letters, red typeface, or both. (*Id.* ¶¶ 3-4.)

In support of his allegations of Best Buy's widespread practice of fraudulent price advertising, Nunez relies on a study by Consumers' Checkbook/Center for the Study of Services ("CSS"), a nonprofit organization. (*Id.* ¶¶ 22-26; Doc. No. 28 ¶ 2, Ex. 1 ("CSS Study").) To conduct the CSS Study, CSS examined eight retail brands, tracking prices online for six to ten items per brand. (CSS Study.) The CSS Study began in June 2014 and continued for forty-four weeks. (*Id.*) With respect to Best Buy, CSS tracked eight items and summarized its findings as follows: "Two of the items we checked were always on sale (although one of them was discontinued after 10 weeks); two other items were offered at sale prices about half of the time; the others were offered at sale prices one-third of the time or less." (*Id.*) The CSS Study concluded that three of the eight brands—but not Best Buy—were "engaged in deceptive advertising practices." (*Id.*)

Based on these allegations, Nunez asserts ten causes of action, which the Court places into three groups. First, Counts 1 through 4 assert that Best Buy's pricing violates Minnesota's consumer protection statutes: the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* (Count 1); the Minnesota Unlawful Trade Practices

3

Act, Minn. Stat. § 325D.09, *et seq.* (Count 2); the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.* (Count 3); and the Minnesota False Statement in Advertisement Act, Minn. Stat. § 325F.67 (Count 4). (First Am. Compl. ¶¶ 47-80.) Second, Count 5 is an equitable claim for unjust enrichment under Minnesota law or, alternatively, under California law. (*Id.* ¶¶ 81-87.) Third, Counts 6 through 10 assert that Best Buy's pricing violates California's consumer protection statutes: the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Counts 6, 7, and 8); the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (Count 9); and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (Count 10). (*Id.* ¶¶ 88-127.)

## DISCUSSION

### I. Legal Standard for Best Buy's Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public

4

record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).[1]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Rule 9(b)'s Particularity Requirement

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading "fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) serves to deter suits filed for the purpose of discovering unknown wrongs and to enable a defendant to understand a plaintiff's claim and effectively prepare a defense. *E.g., Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997); 5A Charles Alan Wright et al., Federal Practice & Procedure § 1296 (3d ed.) (updated Apr. 2016). It applies to all claims premised on

---

[1]     The CSS Study is embraced by the First Amended Complaint, which quotes directly from the CSS Study and draws conclusions from its findings. (*See* First. Am. Compl. ¶¶ 22-26.)

fraud, including "claims of false advertising, deceptive trade practices, unlawful trade practices, and consumer fraud." *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D. Minn. 2011); *see also* 5A Charles Alan Wright, et al., Federal Practice & Procedure § 1297 (3d ed.) (updated Apr. 2016) ("Even when a plaintiff is not making a fraud claim, courts will require particularity in the pleading if the cause of action is premised on fraudulent conduct.").

In this case, Rule 9(b) applies to all counts in the First Amended Complaint, because each count is premised on the same allegations of fraudulent conduct—Best Buy's alleged practice of advertising false "regular" prices for the purpose of inducing consumers to believe, incorrectly, that listed prices are discounted.[2] (First Am. Compl. ¶¶ 1-10, 22-34, 47-127.) Indeed, Nunez does not dispute that Rule 9(b) applies to his claims.[3] (*See* Doc. No. 34 at 33-35.)

---

[2] The elements of fraud in Minnesota and California are nearly identical. Under Minnesota law, a plaintiff must prove: (1) a false representation of material fact; (2) knowledge of falsity; (3) intent to induce reliance; and (4) actual reliance and damages. *E.g., Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 766 (D. Minn. 2015). Under California law, a plaintiff must prove: (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *E.g., Cornejo v. Ocwen Loan Servicing, LLC*, --- F. Supp. 3d ----, Civ. No. 15-993, 2015 WL 9268690, at *9 (E.D. Cal. Dec. 21, 2015). Here, Nunez alleges that Best Buy misrepresented the "regular" price of the microwave, knowing that the representation was false and intending to induce reliance on the representation by consumers. (First Am. Compl. ¶¶ 1-3, 15-16, 29-31, 34.) He further alleges that he relied on the misrepresentation of the "regular" price and was injured. (*Id.* ¶¶ 9, 14, 27-28, 32-33.)

[3] Courts, too, have recognized that Rule 9(b) applies to claims under Minnesota's consumer protection statutes, claims of unjust enrichment based on allegations of fraud, and claims under California's consumer protection statutes. *See, e.g.*, *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 878-79 (D. Minn. 2011) (Minnesota

(Footnote Continued on Next Page)

To satisfy Rule 9(b), "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted). While allegations pleaded upon information and belief typically do not satisfy Rule 9(b), such allegations may suffice if facts constituting the alleged fraud are peculiarly within the defendant's knowledge and the pleading includes a statement of facts upon which the allegations are founded. *Drobnak*, 561 F.3d at 783-84 (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001)).

Here, all claims asserted in the First Amended Complaint fail to meet Rule 9(b)'s particularity standard. To begin, Nunez fails to provide specific facts about Best Buy's alleged fraudulent advertising with respect to Nunez's purchase. Although Nunez states that he began shopping for a microwave in June 2015, he does not allege the date when he purchased the microwave at issue, the model of the microwave, or the specific store where he made the purchase. (*See* First Am. Compl. ¶ 27.) The fact that Nunez does not allege even an approximate date of purchase is particularly problematic in light of

---

(Footnote Continued From Previous Page)

statutory claims); *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (same); *United States v. Henderson*, Civ. No. 03-5060, 2004 WL 540278, at *2 (D. Minn. Mar. 16, 2004) (unjust enrichment under Minnesota law); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California statutory claims); *Arroyo v. TP-Link USA Corp.*, Civ. No. 14-4999, 2015 WL 5698752, at *6-8 (N.D. Cal. Sept. 29, 2015) (same).

Nunez's allegations that Best Buy did not offer the microwave for $199.99 during the three months immediately preceding his purchase. (*See id.* ¶ 28.) If Best Buy does not know when Nunez purchased the microwave, it cannot determine the price at which it sold the microwave during the three months preceding the purchase.

Further, Nunez does not allege specific facts about the marketing upon which he relied, stating only that "[t]he purchase price was advertised as being $20 off the 'regular' price of $199.99" and that Best Buy's "marketing stated in red-backed, white lettering: 'SALE LIMITED TIME ONLY.'" (*See id.* ¶¶ 27-28.) He does not specify whether he relied upon, for example, a price tag in a store, a paper flyer, an e-mail, or a price listed on Best Buy's website.

Finally, Nunez alleges, "[u]pon information and belief," that Best Buy's "prevailing retail price for the GE microwave during the three months immediately prior to [Nunez's] purchase was not the $199.99 'regular' price advertised" by Best Buy at the time of Nunez's purchase.[4] (*See id.* ¶ 28.) Nunez does not specifically allege that the facts underlying this allegation are peculiarly within Best Buy's knowledge, and the Court cannot reach this conclusion either, particularly in light of the First Amended Complaint's lack of key facts about Nunez's purchase and the marketing upon which Nunez relied. Further, Nunez does not provide facts upon which this allegation is

---

[4] This allegation tracks the language of the California False Advertising Law, which states: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the *prevailing market price . . . within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501 (emphasis added).

founded. He does not, for example, allege that the price of the microwave was something other than $199.99 on any specific date prior to his purchase of the microwave. Thus, Nunez's allegation upon information and belief fails to satisfy Rule 9(b). *See Drobnak*, 561 F.3d at 783-84.

Nunez argues that the CSS Study sufficiently supports his allegation that Best Buy defrauded him. (Doc. No. 34 at 34.) The Court, however, disagrees for two primary reasons. First, the CSS Study reports pricing trends for only eight items sold by Best Buy, and it does not include any information about the General Electric over-the-range microwave that Nunez bought. (CSS Study.) As such, the CSS Study lends little—if any—support to the allegation that $199.99 was not the true "regular" price of the microwave Nunez purchased, because it simply does not address that product.

Second, the CSS Study finds that Best Buy offered only one of the eight tracked items at a discounted price for all forty-four weeks. (*Id.*) It concludes that Best Buy offered two additional items at discounted prices for twenty-two and twenty-five weeks, respectively, but it does not specify whether those weeks were consecutive. (*Id.*) Of the remaining five items, the CSS Study finds that Best Buy offered one item at a discounted price for ten weeks before discontinuing it and offered four items at discounted prices for between three and eight of the forty-four weeks. (*Id.*) These findings do not support the proposition that Best Buy offers all or even most of its products at discounted prices for periods of three months or more, and they do not suggest that Best Buy did so with respect to Nunez's microwave. Accordingly, the CSS Study cannot rescue Nunez's deficient pleading.

In sum, the First Amended Complaint's conclusory allegations of Best Buy's fraudulent advertising fail to satisfy Rule 9(b)'s particularity requirement, and Counts 1 through 10 are properly dismissed without prejudice.[5]

## CONCLUSION

All claims in the First Amended Complaint are premised on allegations of fraud—specifically, that Best Buy induced Nunez to purchase a microwave by misrepresenting the microwave's "regular" price so that Nunez believed he was purchasing the microwave at a discounted price. The First Amended Complaint, however, fails to assert these allegations with the particularity that Rule 9(b) demands. Accordingly, the Court dismisses the First Amended Complaint without prejudice.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint or Alternatively, to Strike Portions of the First Amended Complaint (Doc. No. [25]) is **GRANTED**.

2. Plaintiff's First Amended Class Action Complaint (Doc. No. [22]) is **DISMISSED WITHOUT PREJUDICE**.

---

[5] Best Buy asserts a variety of additional arguments in support of its motion to dismiss. (*See generally* Doc. No. 27.) Because the Court dismisses all counts under Rule 9(b), it does not reach these arguments, and it does not reach Best Buy's alternative motion to strike Nunez's class allegations.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 7, 2016                           s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge